**DOMAR OCEAN TRANSPORTATION, LTD., a DIVISION OF LEE–VAC, LTD., and Cenac Towing Co., Plaintiffs-Appellees,**

**Domar Ocean Transportation, Ltd., Plaintiff-Appellee, Cross-Appellant,**

**v.**

**M/V ANDREW MARTIN, her engines, tackle, apparel, etc., in rem, et al., Defendants-Appellants, Cross-Appellees.**

No. 83–3348.

United States Court of Appeals,
Fifth Circuit.

March 8, 1985.

Lemle, Kelleher, Kohlmeyer & Matthews, Ashton R. O'Dwyer, Jr., Charles R. Talley, New Orleans, La., for defendants-appellants, cross-appellees.

Burke & Mayer, James G. Burke, Jr., Daniel E. Knowles, III, New Orleans, La., for plaintiffs-appellees.

Before JOHNSON, HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

After settling the question of liability arising from a collision between two barges under tow, the litigants tried damages to a magistrate. Both sides appeal. We conclude that the plaintiff's tug and tow were so operated as an integrated unit that the physical damage to the barge was sufficient to allow recovery for the loss of use of both under the test of *State of Louisiana v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir.1985) (en banc): that recovery for economic injury requires physical damage to a proprietary interest. We also review the calculation of detention damages and the award of prejudgment interest, affirming in part and reversing in part.

I

Domar Ocean Transportation, Ltd., the maritime freight transportation division of Lee-Vac, Ltd., owns the tank barge DOMAR 7001. Domar, under a long-term, open-ended "evergreen" charter beginning in 1976, had chartered Cenac Towing Co.'s tug CINDY CENAC to tow the DOMAR 7001. Domar, at its own expense, had in-

stalled a raised pilothouse on the CINDY CENAC so that it could be used with the DOMAR 7001 to perform lightering and bunkering services.

On September 12, 1980, the DOMAR 7001 and CINDY CENAC were in the Port Arthur Canal near Mesquite Point, Texas, on their way to Tampa, Florida with a load of No. 6 oil, when the DOMAR 7001 was struck by the BELCHER 101, a barge in the tow of the ANDREW MARTIN, a tug owned by defendant Andrew Martin Marine Corporation. The DOMAR 7001 sustained damage to two of her port cargo tanks. Domar immediately dispatched another barge/tug unit, the barge DOMAR 6501 and the tug RENE J. CHERAMIE, which took on the DOMAR 7001's cargo of oil and completed the voyage.

At the same time, Domar began contacting nearby shipyards in an attempt to locate a yard with gas-freeing facilities that were both available and large enough to handle the DOMAR 7001. After finding none in the immediate vicinity, Domar decided to have the CINDY CENAC tow the DOMAR 7001 to Avondale Shipyards in New Orleans. The DOMAR 7001 arrived at Avondale on September 15. Because another vessel was still in Avondale's gas-freeing facility, gas-freeing on the DOMAR 7001 did not begin until September 19.

After gas-freeing was completed and the DOMAR 7001 was surveyed, Domar requested bids from area repair yards for structural repairs to the barge. On September 30, it accepted Avondale's low bid, and Avondale performed repair operations between October 2 and October 27. On the 27th, Avondale released the DOMAR 7001 from its repair facilities back to its gas-freeing facilities. On October 31, the CINDY CENAC arrived and took the DOMAR 7001 back into service. While the DOMAR 7001 had been under repair, Domar had subchartered the CINDY CENAC, as well as using it to tow other barges.

Domar filed this admiralty action *in rem* against the ANDREW MARTIN. The parties stipulated that the ANDREW MARTIN would be liable for 80 per cent of

Domar's provable damages, but could not agree on the proper amount of damages. They then tried the damages issue before a magistrate, who entered written findings of fact and conclusions of law. With one modification, not relevant here, the district court approved the magistrate's findings and entered judgment for Domar. Andrew Martin challenges one item of damages on appeal; Domar, on cross-appeal, complains that four items were too low.

## II

### -1-

The DOMAR 7001 was at Avondale Shipyards for 1103 hours between September 15 and October 31. The magistrate, after disallowing one 98-hour and one 96-hour block of this time (see subpart 2, *infra*), awarded Domar detention damages of $373 per hour, the average rate charged for the DOMAR 7001/CINDY CENAC combination. The magistrate multiplied that figure by 85.6 per cent, Domar's average utilization rate for Class III barges, and further reduced the award by $107,977.17, the sum earned by the CINDY CENAC while the DOMAR 7001 was out of service. The resulting award for detention damages was $182,216.83.

Andrew Martin complains that much of this award represents Domar's loss of the optimal use of the CINDY CENAC, which, deprived of its partner the DOMAR 7001, earned less than it would have otherwise. Andrew Martin argues that because the CINDY CENAC itself suffered no physical damage, Domar cannot recover for the loss of its use under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed.2d 290 (1927) and *State of Louisiana v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir.1985) (en banc). Andrew Martin cites Domar's accounting records, which attribute 35 per cent of the profits from the DOMAR 7001/CINDY CENAC combination to the barge, and 65 per cent to the tug, and asks that we allow only 35 per cent of the sum awarded below for detention damages.

■ *TESTBANK* is not so restrictive. *TESTBANK* reaffirms this circuit's rule, developed from *Robins,* that maritime tort damages for economic loss can be awarded only when the plaintiff has suffered physical damage to a proprietary interest. Domar, though, had a proprietary interest in the DOMAR 7001 and the CINDY CENAC as a unit. Domar was in the business of freight transportation, not of vessel rental. Accordingly, it offered its customers the use of the DOMAR 7001 and the CINDY CENAC as a unit, and not as individual vessels. Moreover, Domar had spent $350,000 to install a raised pilothouse aboard the CINDY CENAC specifically to enable the CINDY CENAC and DOMAR 7001 to be used together for lightering and bunkering. Even if the two vessels were not so uniquely designed to work with each other as to exclude other use, they were indisputably so operated that they functioned as an integrated unit.

We are persuaded that Domar had the requisite proprietary interest in the combination. The DOMAR 7001/CINDY CENAC unit was physically damaged through Andrew Martin's stipulated negligence. Thus, *TESTBANK* is no bar to Domar's recovery for the loss of use of the unit.

■ Andrew Martin also contends that in any event, as a matter of law, Domar's damages for the loss of use of the undamaged CINDY CENAC were too tenuous and remote to be reasonably foreseeable. *TESTBANK*'s requirement of physical injury is a pragmatic limitation on the recovery of foreseeable economic losses. On these facts, that Domar's damages were foreseeable is implicit in the conclusion that the test of *TESTBANK* is met.

–2–

■ Domar disputes two of the factual findings made by the magistrate in calculating detention damages. Domar complains that the district court excluded from its computation (1) the 98 hours between September 15 and 19, during which the DOMAR 7001 was waiting to enter the Avondale gas-freeing facilities, and (2) the 96 hours between October 27, when the DOMAR 7001 was released from Avondale's repair yard, and October 31, when the CINDY CENAC reclaimed its partner. We can overturn the factual findings below only if they are clearly erroneous. *Delta Steamship Lines, Inc. v. Avondale Shipyards, Inc.,* 747 F.2d 995, 1000 (5th Cir. 1984); *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954).

■ The magistrate's only explanation for his exclusion of the September 15–19 period is as follows: "Gas freeing commenced on September 19, 1980, delayed 98 hours for which defendant should not bear responsibility." In support of the magistrate's ruling, Andrew Martin cites the testimony of its expert, Hector Pazos, who said that if Domar had been more diligent, it could have found a yard whose gas-freeing facilities were immediately available. The magistrate, though, implicitly but indisputably rejected Pazos's testimony. In awarding damages for the 44.5 hours spent towing the DOMAR 7001 to New Orleans, he stated:

> Shipyards in the immediate area with gas free facilities were contacted; however, either the gas freeing facilities or the repair facilities were unavailable or insufficient to handle a tank barge the size of DOMAR 7001 and an election was made to tow the damaged barge to Avondale Shipyards in the Port of New Orleans. *The Court finds that this decision was prudent and reasonable....* (emphasis added).

The finding of fact that Domar's decision to tow to Avondale was reasonable necessitates the conclusion that the 98-hour wait for the DOMAR 7001 to enter the gas-freeing yard was also reasonable, and indeed unavoidable. Such reasonable delays in repair time are properly included in computing detention damages. *See Delta Marine Drilling Co. v. M/V BAROID RANGER,* 454 F.2d 128, 130–31 (5th Cir.1972) (delay caused by bad weather properly included). The magistrate's denial of damages for the 98-hour delay despite his finding that the

tow to Avondale was reasonable is therefore clearly erroneous.

■ The magistrate explained his denial of demurrage for October 27–31 as follows:

Avondale's assistant to the vice-president in charge of repairs testified that work was completed on [October] 27, 1980. (Record Document 44, p. 32–33). The record contains no explanation for the 4 day delay in picking up the barge, thus 96 hours should not be chargeable to defendant.

The testimony that the magistrate is here referring to, however, explains the disputed 96 hours. On the very pages cited by the magistrate, the witness, Ivy Ehret, stated that on October 27, the DOMAR 7001 was moved from Avondale's repair yard to its gas-freeing plant. He then suggested that the DOMAR 7001's tanks were cleaned of water and debris at the gas-freeing facility. Although Ehret could not verify this through personal knowledge, Avondale time sheets showed that gas-freeing workers, shipfitters, pipefitters, and welders had worked on the DOMAR 7001 on October 28, 29, 30, and 31. There was no contrary evidence. In addition, the record, without dispute, reflects that the first 24 hours of the 96 in question, from October 27 to 28, were used to drydock the DOMAR 7001 at Domar's request for inspection of the barge's lower hull and skegs. The magistrate's "no explanation" finding is thus clearly erroneous as well.

On remand, the court should award damages for the 98 hours between September 15 and 19, and for the 72 hours between October 28 and 31. Because the parties dispute the reasonableness of the drydocking, and because the magistrate did not address that question, we leave it to the court on remand to resolve that issue in the first instance. If the court finds that the drydocking was reasonable, it should award damages for October 27 as well.

### III

The magistrate awarded Domar $6,055 for the cost of using the DOMAR 6501 and the RENE J. CHERAMIE to complete the DOMAR 7001/CINDY CENAC assignment. Domar had sought $12,775, based on the hourly rate (cost plus profit) that Domar charged for the DOMAR 6501 and RENE J. CHERAMIE. The magistrate, finding that the substitute vessels had been idle, and that there was no evidence that they would have been hired during the 35 hours of their relief journey, rejected Domar's argument.

■ The court was correct in requiring proof that Domar's substitute vessels would have been hired before awarding lost profits for their use. *See Inland Oil and Transport Co. v. Ark-White Towing Co.*, 696 F.2d 321, 326–27 (5th Cir.1983); *cf. Delta Steamship Lines v. Avondale Shipyards, Inc.*, 747 F.2d 995, 998, 1008 (5th Cir.1984) (damages for lost profits of substituted vessels upheld based on proof that substitutes would have earned profits if not rerouted). The rule restates the general principle of *The CONQUEROR*, 166 U.S. 110, 125, 17 S.Ct. 510, 516, 41 L.Ed. 937 (1897) that lost profits must be proved "with reasonable certainty."

■ Domar points to the average use rate of the DOMAR 6501 and the RENE J. CHERAMIE, 85.6 per cent, as evidence that the combination probably would have been hired. Average use rates are legitimate evidence of lost profits, *see Todd Shipyards Corp. v. Turbine Services, Inc.*, 674 F.2d 401, 414 (5th Cir.1982); in fact, the magistrate in this case used the same 85.6 per cent figure to compute the profits lost by the DOMAR 7001 and CINDY CENAC. The DOMAR 6501 and RENE J. CHERAMIE, though, were out of service only 35 hours, as compared to 45 days for the DOMAR 7001 and CINDY CENAC. The court below could reasonably have concluded that the average use rate, by itself, was not sufficient evidence that the DOMAR 6501 and RENE J. CHERAMIE would have been hired during that short time. Its determination on this point was not clearly erroneous.

## IV

Finally, Domar contests the trial court's award of prejudgment interest at the Louisiana statutory rate of 12 per cent rather than Domar's alleged cost of borrowing, 17½ per cent. Domar introduced no evidence that it had to borrow funds as a result of the barge collision, but offered testimony that it would have used Andrew Martin's damage payment to reduce its short-term loan position.

██ In *Complaint of M/V VULCAN*, 553 F.2d 489 (5th Cir.), *cert. denied*, 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977), we held that a trial court's award of prejudgment interest at a rate equal to the plaintiff's cost of borrowing was not an abuse of discretion. In *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1177 (5th Cir.1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982), though, we stated that "we see no reason to turn the holding of [*VULCAN*] inside out to make an award at a rate other than plaintiff's actual cost of borrowing an abuse of discretion;" we also noted the *Signal* plaintiff's failure to show that it had borrowed any money. Under *Signal*, the magistrate's choice of 12 per cent was not an abuse of discretion.

## V

To sum up, we affirm the magistrate's computation of detention damages at $373 per hour times 85.6 per cent. We reverse his exclusion of 194 hours from that computation, and remand for a determination of whether 24 of those hours should be included. In all other respects, the judgment is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.