**CONSOLIDATED ALUMINUM CORPORATION, Plaintiff-Appellant,**

v.

**C.F. BEAN CORPORATION, et al., Defendants-Appellees.**

No. 84–4195.

United States Court of Appeals, Fifth Circuit.

Oct. 7, 1985.

Opinion on Rehearing and Rehearing En Bankc Dec. 6, 1985.

Donald C. Winson, Eckert, Seamans, Cherin & Mellott, Richard T. McGonigle, J.W. Montgomery, III, Pittsburgh, Pa., Plauche, Smith & Nieset, A. Lane Plauche, Lake Charles, La., for plaintiff-appellant.

Allen F. Campbell, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants-appellees.

Mat M. Gray, III, New Orleans, La., for St. Paul Fire & Marine Ins. Co.

David V. Hutchinson, Columbia, Md., for U.S.A., amicus curiae.

Before JOHNSON, JOLLY, and HILL, Circuit Judges.

JOHNSON, Circuit Judge:

Consolidated Aluminum Corporation (Consolidated) sues C.F. Bean Corporation (Bean) for physical damages and economic losses that occurred shortly after a dredge owned and operated by Bean ruptured a Texaco natural gas pipeline. The Texaco pipeline supplied Consolidated's aluminum processing plant with natural gas. The resulting interruption in the supply of gas to Consolidated's plant caused extensive damage to the physical equipment at the plant that Consolidated employed for processing aluminum.

The district court granted Bean's motion for summary judgment on Consolidated's claim of negligence for damages to the plant's equipment.[1] The district court held that, under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), no cause of action exists in tort for negligent interference with contract, even where a plaintiff has sustained physical damages arising out of the interference with contract. This Court has interpreted *Robins Dry Dock* to hold that recovery is barred to a plaintiff who asserts a claim for economic loss unaccompanied by physical damage to property in which the plaintiff has a proprietary interest. *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir.) (en banc), *petition for cert. filed*, 53 U.S.L.W. 3839 (May 28, 1985). After careful consideration of the stipulated facts of this appeal and this Court's interpretation of *Robins Dry Dock* in *TESTBANK*, we hold that the "bright line" rule of *Robins* and *TESTBANK* does not reach the instant case and that a plaintiff's claim of negligence for physical damages to equipment in which the plaintiff has a proprietary interest should be analyzed under tort principles applied by this Court in admiralty.[2] Accordingly, the summary judgment in favor of Bean on Consolidated's negligence claim is reversed and the case is remanded.

## I. FACTS AND PROCEDURAL HISTORY

### A. *Stipulated Facts on this Appeal*

For the district court's use in ruling upon Bean's motion for summary judgment, Bean, its insurers,[3] and Consolidated en-

---

1. The district court entered a final judgment under Fed.R.Civ.P. 54 and stayed all further proceedings in the case pending appeal to this Court. Record at 3.259–60.

2. The limited nature of this appeal deserves special emphasis. As noted in more detail later in this opinion, *see infra* at 1220–1221, the district court explicitly declared that it was resting its opinion on a theory of negligent interference with contract and that no findings were made as to whether Consolidated's claim of negligence would withstand scrutiny under a foreseeability test. Accordingly, those questions are not reached on this appeal.

3. Consolidated sued both C.F. Bean Corporation, Bean Dredging Corporation, and their insurers. The stipulation of the parties recognized that C.F. Bean Corporation and Bean Dredging Corporation should be collectively referred to as "Bean" for the purposes of considering the motion for summary judgment and the appeal from the district court's ruling thereon. Record at 3.39. Following the parties' stipulation, we also refer to both companies and their insurers as "Bean."

tered into a stipulation of facts. These stipulated facts will be summarized here.

Consolidated owned and operated an aluminum reduction plant near Lake Charles, Louisiana. This plant contained the following facilities:

a. An electrically operated aluminum reduction pot line containing 71 operating smelting pots wherein alumina and bath materials are heated and melted in an electrolytic process by which molten aluminum is produced. Each pot utilizes 24 carbon anodes weighing in excess of 1000 pounds each which are suspended above the pots and project downward into the molten bath. The bottom of each pot consists of cathode blocks on which the aluminum is produced.

b. A gas fired coke calciner approximately 180 feet in length which is lined with refractory brick and refractory material. In this calciner green coke is subject to temperatures, which in portions of the calciner exceed 2500 degrees Fahrenheit, and the green coke is thereby refined into calcined coke.

c. A power plant which utilizes natural gas to produce electric energy for plant operations. The power plant consists of three gas fired jet turbines, three steam boilers and two steam turbines, as well as associated electric generators.

Record at 3.39–40. To supply the power plant with gas necessary for the power plant's operation, Consolidated had entered into a Gas Sale and Purchase Agreement with Texaco. Other than Consolidated's contractual interest, Consolidated had no ownership interest in the Texaco pipeline. Bean had no knowledge of this contract between Consolidated and Texaco prior to the accident in question.

On April 5, 1980, Bean was conducting maintenance dredging operations in the Calcasieu River Ship Channel under a contract with the United States Army Corps of Engineers. This contract between Bean and the Corps of Engineers specifically warned Bean of the presence and location of the Texaco pipeline:

1–10. WORKING IN THE VICINITY OF STRUCTURES AND UTILITY CROSSINGS

1–10.1 The Contractor [Bean] shall exercise caution when working in the vicinity of structures and utilities crossing or adjacent to the channel....

.        .        .        .        .

1–10.3 The following structures or utilities are located within the limits of the work.... It will be the responsibility of the Contractor to verify these locations and clearances.

| UTILITY OR STRUCTURE | OWNER | STATION | ELEVATION | ADDRESS OF OWNER |
|---|---|---|---|---|
| 12″ gas pipeline | Texaco, Inc. | 1683+90 | −50.0 MLG | P.O. Box 60252, N.O., La. 70160 |

Record at 3.232–33.[4]

During the performance of Bean's work, the cutterhead of one of the dredges owned and operated by Bean struck and ruptured the Texaco pipeline. Within minutes, the rupture of the Texaco pipeline caused a reduction in gas pressure and supply to Consolidated's power plant, located approx-

imately six miles from the pipeline rupture in the Calcasieu River.[5] As a result of this loss of supply, the amount of natural gas flowing to Consolidated's plant fell below the minimum required to operate Consolidated's plant powerhouse. Because of the reduction in gas pressure and supply, Consolidated sustained heavy physical damages:

4. As noted above, however, Bean did not specifically know that the Texaco pipeline served Consolidated's plant.

5. The parties dispute in their briefs whether the harm to Consolidated's plant occurred immediately or whether the harm occurred only after

Texaco shut down a main gas line to repair the rupture. Given the procedural posture of the instant case, this Court has not attempted to resolve this factual dispute and has assumed, for purposes of this appeal, that the rupture caused a reduction in gas supply "within minutes."

a. Freezing (solidifying) of the liquid bath materials and liquid aluminum in the reduction pots;

b. Cracking and air burning of anodes in the reduction pots;

c. Cracking of cathode blocks in the reduction pots;

d. Air burning of sidewall blocks in the reduction pots;

e. Burning of breaker bars in the reduction pots;

f. Loss of useful life of the reduction pots; and

g. Loss and cracking of calciner refractory materials.

Record at 3.42–43. Indeed, the resulting physical damage was so heavy that the parties stipulated the physical damages to Consolidated's plant at a value of $2.3 million. Consolidated contends that it suffered total physical and economic damages amounting to approximately $4.6 million. Full natural gas supply was not restored to Consolidated until ten days later on April 15, 1980.

## B. *Procedural History*

Consolidated filed its complaint against C.F. Bean Corporation, Bean Dredging Corporation, their insurers, and Texaco to claim damages for physical and economic losses resulting from the interruption of gas services at Consolidated's plant. Consolidated's complaint alleged three grounds of recovery: (1) an action against Bean and Texaco on grounds of negligent or intentional acts or omissions leading to the injury; (2) an action against Bean on the grounds that Consolidated could recover as a third-party beneficiary under the Bean-Army Corps of Engineers contract; and (3) an action in contract against Texaco based on the Texaco-Consolidated Gas Sale and Purchase Agreement.[6] Texaco, in turn, impleaded the United States through the Department of the Army and its Corps of Engineers, claiming that the United States was also responsible for the negligent dredging which caused the rupture of the Texaco natural gas pipeline. Jurisdiction was based on the Admiralty Extension Act, 46 U.S.C. § 740, and on diversity, 28 U.S.C. § 1332.

At the time set for trial, the United States raised the issue of *Robins Dry Dock* concerning the claims by Consolidated, through Texaco, against the United States. After consideration of the issue, the district court then permitted Bean to reopen a prior summary judgment motion by Bean based on the same grounds. As noted above, Consolidated and Bean entered into a stipulation of facts for the district court's use in considering Bean's renewed motion for summary judgment.[7]

In its opinion, the district court held that Consolidated's action for negligent dredging against Bean was barred by *Robins Dry Dock* and its progeny in this Court. The district court's opinion, however, also contained statements which could be construed as stating that the district court also held that Consolidated was an unforeseeable plaintiff when its cause of action was considered in light of common law tort principles. *See* Record at 3.247 ("Consolidated's extensive physical and economic damages were too remote and not foreseeable as a result of Bean's negligence"). Concerned about a possible ambiguity in the district court's opinion, Consolidated filed a motion urging the district court to clarify its holding so that the matter would be more clearly presented to this Court on appeal.[8] Consolidated's motion noted, "Had the issue of foreseeability been before the [District] Court, Consolidated would have presented a substantial volume of evidence showing that harm to customers served by the pipeline was a foreseeable consequence of the pipeline rupture." Record at 3.251. The motion in subpara-

---

**6.** As noted above, *see supra* at 1218 n. 1, all further proceedings in the district court were stayed pending appeal on the district court's granting of summary judgment in favor of Bean on Consolidated's tort action against Bean. Any questions arising from Consolidated's other alleged causes of action are not presented to this Court on this appeal.

**7.** The stipulation also noted that Texaco had invoked as a defense the force majeure provision in Consolidated's action in contract against Texaco based on the Consolidated-Texaco Gas Sale and Purchase Agreement.

**8.** We commend the practice of the parties in stipulating the facts clearly and in clearing up any possible ambiguity in the district court's opinion. Although the district court's holding, when read as a whole, is remarkably precise, the action by Consolidated relieved this Court of any doubt in the matter. The parties are also commended for their thorough presentation of the issue presented.

graphs 3(b)–(e) then pointed out several issues of fact which bore on the question of foreseeability and which had been referred to in the district court's opinion but which were not contained in the stipulation of facts. In response to Consolidated's motion, the district court supplemented its original opinion:

> The Court has granted summary judgment in favor of Bean and against Consolidated on Consolidated's cause of action for negligence against Bean, on the basis of the Court's holding, as a matter of law, that no cause of action exists for negligent interference with contract, even where the plaintiff has sustained physical damages arising out of the interference with contract. The Court has made no findings of fact with respect to the issue of foreseeability or the other issues listed in paragraph 3(b)–(e) of Consolidated's motion.

Record at 3.257–58.

## II. THE MERITS

The district court granted summary judgment in Bean's favor on Consolidated's claim of Bean's negligence in its dredging operations. Summary judgment is appropriate only if the full record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In considering whether to grant a motion for summary judgment, the district court must view the evidence in the light most favorable to the party resisting the motion. The standard of review on appeal is the same. *Simon v. United States,* 711 F.2d 740 (5th Cir.1983).

Since Consolidated's contractual right to receive natural gas from Texaco was interrupted by Bean's negligent rupture of the Texaco pipeline, the district court characterized Consolidated's action against Bean for negligence as an action for negligent interference with contract. Record at 3.240, 3.244. While Consolidated recognizes that purely economic losses flowing from negligent interference with contract are not recoverable as a matter of law, *see, e.g., TESTBANK,* Consolidated argues that the presence of physical damages to property in which Consolidated has a proprietary interest (i.e., physical damages to its own plant) requires that this case be considered under tort principles of foreseeability. Consolidated asserts that it will present evidence on foreseeability if Consolidated is allowed to proceed to trial. Record at 3.251. Bean, on the other hand, argues that the distinction of physical damages in the instant case is of no significance and that this case is governed by cases in this Court holding that no cause of action exists for economic damages resulting from negligent interference with a contractual right.

In arguing that the district court's summary judgment should be sustained, Bean relies heavily on *Robins.* In *Robins,* a ship had been delivered to the defendant for repairs. Under the terms of a contract between the ship's owner and the time charterers, the time charterers were not obliged to pay rent while the ship was being repaired. The defendant, who had contracted with the owner of the ship for the repair work, negligently damaged the ship's propeller. During the additional delay caused by repairs to the propeller, the time charterers lost expected profits from the use of the ship. The time charterers sued the defendant for these economic losses. The Supreme Court rejected the claim. The only item physically damaged was the propeller, and "[t]he injury to the propeller was no wrong to the [time charterers] but only to those to whom it belonged." *Robins,* 275 U.S. at 308, 48 S.Ct. at 135. The Court went on to note that the time charterers had lost only the benefit of their contract for hire and that "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. The law does not spread its protection so far." *Id.* at 308–09, 48 S.Ct. at 135 (citations omitted).

Taken by itself, *Robins,* however, is of somewhat limited applicability in that it holds "only that if a defendant's negligence injures party *A,* and the plaintiff suffers loss of expected income or profits because it had a contract with *A,* then the plaintiff has no cause of action based on the defendant's negligence." *TESTBANK,* 752 F.2d at 1040 (Wisdom, J., dissenting). In the instant case, the plaintiff Consolidated sues not solely for any lost income or other *economic* loss from the interruption of its

supply of natural gas (e.g., due to being forced to pay higher prices for an alternative supply) but instead for *physical* losses, as well as attendant economic damages, to its own property which occurred as a result of the interruption of Consolidated's supply of gas "within minutes" of the pipeline's rupture. Thus, unlike the time charterers in *Robins,* Consolidated's suit centers on the physical damages it sustained resulting from the incident.

Thus, if a rule based on *Robins* which bars Consolidated's claim per se is to be found, it must lie in the interpretation that this Court and other jurists have given to *Robins.* Recently, this Court, sitting en banc, conducted an exhaustive study of *Robins* and its progeny. In *TESTBANK,* this Court reviewed a summary judgment entered against a host of plaintiffs who claimed purely economic losses arising out of a spill of a toxic chemical in the Mississippi River Gulf outlet. Reviewing this Court's interpretation of *Robins* [9] and the cases cited by Justice Holmes in his opinion in *Robins,* the Court determined that *Robins* is not based on whether a plaintiff's harm is "foreseeable" or "remote" in a factual sense but instead on "the character of the interest harmed" for which a plaintiff seeks relief. *TESTBANK,* 752 F.2d at 1022–24 (quoting *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023, 1025 (5th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979)). The "character of the interest harmed" for which the plaintiffs sought relief in *TESTBANK* was solely economic. *Id.* at 1021. Given this character of the interest harmed, the Court reaffirmed the holding of this Court that "physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional maritime tort." *Id.* at 1020. The Court emphasized that to abandon the

physical injury requirement would impose a "limitless type of liability," *id.* at 1025 (quoting *General Foods Corp. v. United States,* 448 F.Supp. 111 (D.Md.1978)), and the result would be "wave upon wave of successive economic consequences." *Id.* at 1028. The Court also noted the corresponding difficulty to courts in managing such economic claims on a discrete basis under traditional tort principles. *Id.* at 1028. Thus, where the character of the interest harmed was solely economic, the Court held that no recovery could be allowed under *Robins* as a "pragmatic limitation upon the tort doctrine of foreseeability." *Id.* at 1023.

In the instant case, this "pragmatic limitation upon the tort doctrine of foreseeability" does not apply. Rather, Consolidated plainly suffered physical harm to property in which it has a proprietary interest—i.e., its own equipment for deriving aluminum. Thus, *TESTBANK* does not apply. *See Domar Ocean Transportation, Ltd. v. M/V ANDREW MARTIN,* 754 F.2d 616 (5th Cir.1985) ("maritime tort damages for economic loss can be awarded only when the plaintiff has suffered physical damage to a proprietary interest"). Further, Bean's characterization of the physical harm in this case as a "negligent interference with contract" tends to obscure more than to illuminate. Unlike the claimant in *Robins,* Consolidated does not seek recovery solely for the loss of a contractual expectancy. While Bean's alleged negligence certainly interfered with Consolidated's contractual arrangement with Texaco, it cannot be gainsaid that, under the stipulated facts on this appeal, Bean's negligence also led to Consolidated's physical damages. While the presence of the Consolidated-Texaco contract *is relevant* to the question of foreseeability, its presence in the causal chain does not bar recovery.[10]

---

9. Perhaps most notably, the *TESTBANK* Court observed that in *Kaiser Aluminum & Chemical Corp. v. Marshland Dredging Co.,* 455 F.2d 957 (5th Cir.1972) (per curiam), the plaintiff lost gas supplies when the defendant dredging company broke a gas pipeline owned by Sugar Bowl Gas Company. Kaiser sought only economic losses for shutdown expenses and production losses. The Court held that because such economic losses were only negligently inflicted, recovery was precluded as a matter of law.

10. Indeed, the Court in *TESTBANK* noted that a contractual relationship can make the plaintiff's

harm *more* foreseeable. In discussing *Byrd v. English,* 117 Ga. 191, 192, 43 S.E. 419 (1903), a case involving a printer's recovery for lost profits resulting from the defendant's negligent interruption of the plaintiff's electrical power, the Court stated,

> That the printing company had a contract with the power company did not make more remote the relationship between its loss of profits and the tortious acts. To the contrary, the contract reduced this remoteness by defining an orbit of predictable injury smaller than if there were no contract between the power company and the printer. When the loss is

The Court's result in the instant case is consistent with the opinions of other courts and commentators. In accord with this Court's rule in *TESTBANK*, the Restatement (Second) of Torts, for example, notes that there has been no general recognition of liability for a negligent interference with contract absent physical injury to a plaintiff's proprietary interest.[11] The authors explain that courts generally have been reluctant to allow claims for such economic losses because of the difficulty in limiting a defendant's liability. Restatement (Second) of Torts § 766C, Comment a. Where plaintiffs have suffered physical harm to their own property, however, these authorities recognize that the rationale for applying the rule foreclosing relief for economic harm does not apply. While the number of plaintiffs suffering only economic harm from a negligent act is indeterminate and perhaps infinite, the number of potential plaintiffs suffering physical harm is generally neither as indeterminate nor as possibly infinite. *See* Comment, *Foreseeability of Third-Party Economic Injuries—A Problem in Analysis*, 20 U.Chi.L.Rev. 283, 298 (1953); Pearlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine*, 49 U.Chi.L.Rev. 61, 71–72 (1982). Thus, commentators have stated that a plaintiff is not barred from recovery where the plaintiff has suffered physical harm to his own person or property. The Restatement authors explain:

> **b. Physical harm to the other.** The rule stated in this Section [766C] applies when the plaintiff suffers only pecuniary loss, such as the loss of the financial benefits of a contract or of prospective trade or financial loss through being put to additional expense. If there is physical harm to the person or land or chattels of the plaintiff, the rule stated in this Section does not apply and there may be recovery for negligence that results in physical harm because of the nonperformance of a contract with the plaintiff. This recovery is of course subject to the usual rules governing liability for negligence.

Restatement (Second) of Torts § 766C, Comment b (citations omitted).[12] Likewise,

---

economic rather than physical, that the loss caused a breach of contract or denied an expectancy is of no moment.
752 F.2d at 1023–24.

**11.** Section 766C states:
Negligent Interference with Contract or Prospective Contractual Relation.
One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
    (a) causing a third person not to perform a contract with the other, or
    (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
    (c) interfering with the other's acquiring a contractual relation with a third person.
Restatement (Second) of Torts § 766C.

**12.** The distinction that this Court has drawn (as exhibited in *TESTBANK*) between physical and economic damages has also been drawn by other courts. *See, e.g., Barber Lines A/S v. M/V DONAU MARU*, 764 F.2d 50 (1st Cir.1985). Likewise, state courts have made a similar distinction. In *Stop & Shop Cos. v. Fisher*, 387 Mass. 889, 444 N.E.2d 368 (1983), the plaintiff sought damages for loss of business revenues allegedly caused by the defendant's negligent collision with a drawbridge. Although the plaintiff had no proprietary interest in the drawbridge, the plaintiff alleged that it suffered economic losses due to the loss of potential customers who could not cross the drawbridge and reach the plaintiff's store. The court distinguished an earlier Massachusetts case, *Newlin v. New England Telephone & Telegraph Co.*, 316 Mass. 234, 54 N.E.2d 929 (1944), on the basis that *Newlin* involved physical harm to the plaintiff's own property caused by the interruption of plaintiff's supply of electricity from the power company. On an appeal from the trial court's sustaining of a demurrer, the court in *Newlin* allowed recovery for the loss of plaintiff's mushrooms which resulted when the defendant's telephone pole fell and severed an electrical power line supplying plaintiff's electrical apparatus for controlling temperature. Similarly, courts generally have recognized, albeit in dicta, that a distinction exists between cases in which a plaintiff sustains physical damages and those in which only economic damages are claimed. *See, e.g., Akron Corp. v. M/T CANTIGNY*, 706 F.2d 151, 153 (5th Cir.1983) (per curiam); *Louisville & N. R.R. v. M/V BAYOU LACOMBE*, 597 F.2d 469, 473–74 (5th Cir.1979); *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984).
    Moreover, to the extent that Louisiana law is relevant to the instant case, it is consistent with this writing. In *PPG Industries, Inc. v. Bean Dredging Corp.*, 447 So.2d 1058 (La.1984), the court was confronted with PPG's claims for economic losses only arising out of the same dredg-

Professors Prosser and Keeton distinguish instances in which a plaintiff recovers for physical damages from the rule denying relief for economic losses resulting from negligent interference with contract. W. Prosser & W. Keeton, *Prosser and Keeton on the Law of Torts*, § 129, at 1000 n. 27 (Lawyers' ed. 1984).

### III. CONCLUSION

We therefore conclude that the district court erred in granting summary judgment in favor of Bean. The "pragmatic limitation upon the tort doctrine of foreseeability," derived from *Robins* and *TESTBANK*, does not apply to the instant case. While defendant Bean urges this Court to determine "[u]nder a traditional tort analysis [that] Consolidated's harm [is] ... too remote," Bean's Brief at 12, we leave the determination of the foreseeability of Consolidated's injury for the trial court to determine on remand. Likewise, application of other tort law principles applied in admiralty are left for the trial court on remand as questions calling for the determination of such principles are not presented on this appeal.

### REVERSED AND REMANDED

### ON PETITION FOR REHEARING WITH SUGGESTION FOR REHEARING EN BANC

#### PER CURIAM:

The petition for panel rehearing is DE-NIED. In view of the petition's suggestion that the panel opinion inadvertently creates "a brand new theory of recovery for negligent interference with a contract where physical damage occurs solely from the loss of anticipated contract benefits," we take this opportunity to reemphasize the limited nature of the appeal and the narrowness of our holding.

Our discussion of the Robins Dry Dock/TESTBANK line of cases showed that the "pragmatic limitation upon the tort doctrine of foreseeability," State of Louisiana, ex rel. Guste v. m/v TESTBANK, 752 F.2d 1019, at 1023 (5th Cir.1985), established by these cases, is inapplicable to the instant case because the plaintiff Consolidated unquestionably suffered physical harm to its own property. We further conclude that the mere existence of a contract between Texaco (whose property suffered the most immediate harm from the defendant's dredging) and Consolidated does not create a legal bar to Consolidated's claim against Bean for negligent dredging. We in no way intimated that Consolidated could recover for "negligent jinterference with contract." Nor did we hold that summary judgment for the defendant would necessarily be improper on the facts of the instant case. Rather, we remanded because the district court expressly omitted to review the issue of foreseeability with regard to negligent dredging. We expressly declined to reach the question of "whether Consolidated's claim of negligence would withstand scrutiny under a foreseeability test," 772 F.2d at 1218 n. 2, and left the application of traditional tort principles, including foreseeability and the related concept of legal duty, for the trial court to determine on remand, at 1224.

Thus, the petition for rehearing is DE-NIED, and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for rehearing en banc is DENIED.

---

ing accident as that which occurred in the instant case. The court did not apply a rule of per se exclusion, as that contained in *Robins*, but instead held that PPG's claim for economic loss-es was not recoverable under a duty risk analysis. The court emphasized that its holding turned largely on the economic character of PPG's loss. 447 So.2d at 1061.