**CARGILL, INC., et al.,**
**Plaintiffs-Appellants,**

v.

**DOXFORD AND SUNDERLAND,**
**LTD., Defendants,**

**Bethlehem Steel Corporation,**
**Defendant-Appellee.**

**No. 85–3486**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1986.

Rehearing and Rehearing En Banc
Denied April 2, 1986.

O'Neil, Eichin & Miller, Earl S. Eichin, Jr., New Orleans, La., I. Matthew Williamson, for plaintiffs-appellants.

Terribery, Carroll & Yancey, Edward S. Bagley, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, JERRE S. WILLIAMS, and PATRICK E. HIGGINBOTHAM, Circuit Judges.

**OPINION**

PATRICK E. HIGGINBOTHAM, Circuit Judge:

I

The defendant Bethlehem Steel repaired the thrust block of M/V SERENA's engine some time before the SERENA, which was under a charter to the plaintiff Cargill, experienced engine failure while transporting Cargill's grain. Cargill conceded that no foreign objects were thrown into the

cargo hold and that the mechanical malfunction was confined to the engine room. The vessel was disabled by the engine failure, and Cargill eventually elected to remove the perishable grain from the ship rather than leave it to deteriorate while the engine was being repaired.

In a tort action against several parties, Cargill charged Bethlehem with negligence in repairing the SERENA's engine. In order to meet the physical injury requirement of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), and *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir.1985) (en banc), Cargill asserted that some of its grain had rotted because of moisture that accumulated while the SERENA was disabled, that some of the grain was inevitably damaged by the shovels or buckets used in removing it from the ship, and that some loss of cargo necessarily accompanies any discharge of a bulk cargo.

The district court concluded that any damage that Cargill suffered was due solely to the delay that accompanied the need to repair the vessel's engine: "Cargill did not contract with the ship repairer [i.e. Bethlehem] and the action of the ship repairer did not cause any direct immediate damage to Cargill's grain. That grain was in the same condition before and after the engine failure." Relying primarily on *Robins Dry Dock* and on its progeny in our circuit, the court granted summary judgment in Bethlehem's favor.

On appeal, Cargill argues that *Robins Dry Dock* and *TESTBANK* require no more than that a plaintiff show that the defendant's negligence was a "but for" cause of the plaintiff's physical damages. Because such "but for" causation was indisputably present in this case, Cargill argues that the district court in effect decided that Bethlehem's negligence, if any, could not have been a legal or proximate cause of Cargill's losses. Cargill asserts that this decision was erroneous because there were unresolved issues of material fact that bore on the question of proximate causation.

## II

This case falls squarely under *Robins Dry Dock*. In *Robins*, the time charterers of a steamship sought to recover from a dry dock and repair company the value of two weeks' use of the steamer. 275 U.S. at 307, 48 S.Ct. at 135. The loss of use was occasioned by damage to the ship's propeller; the damage to the propeller, in turn, was inflicted while the ship was being repaired by the dry dock company. Frustrated in their attempt to recover as a third-party beneficiary of the contract between the ship's owner and the repairer, *see* 275 U.S. at 307–08, 48 S.Ct. at 135, the charterers pointed to the "tortious damage to a chattel [and] sought to connect [their] claim with that in some way," *id.* at 308, 48 S.Ct. at 135. The Supreme Court held that the charterers could not recover in tort against the ship repairer:

> The damage [to the propeller] was material to [the charterers] only as it caused the delay in making the repairs, and that delay would be a wrong to no one except for the [repair company's] contract with the owners [of the vessel]. The injury to the propeller was no wrong to the [charterers] but only to those to whom it belonged. But suppose that the [charterers'] loss flowed directly from that source. Their loss arose only through their contract with the owners—and ... a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. The law does not spread its protection so far.

275 U.S. at 308–09, 48 S.Ct. at 135 (Holmes, J.) (citations omitted). The only relevant difference between this case and the case at bar is that Cargill seeks to extend the protection of the law even further. Whereas the *Robins Dry Dock* charterers sought only to recover the market value of the vessel's use while she was delayed, 275 U.S. at 305, 48 S.Ct. at 134, Cargill seeks to recover for *all* its losses that were in any

manner associated with the delay that was caused by the malfunction of the SERENA's engine. Because the charterers in *Robins Dry Dock* were prohibited from recovering in tort against the repair company that caused the delay, Cargill is *a fortiori* prohibited from recovering against Bethlehem.

Cargill tries to escape the application of *Robins Dry Dock* by pointing to our en banc decision in *TESTBANK*, which reaffirmed "the prevailing rule [that denies] a plaintiff recovery for economic loss if that loss resulted from physical damage to property in which he had no interest." 752 F.2d at 1022 (citations omitted). In *TESTBANK*, we focused on the importance of physical injury as a necessary condition of recovery for economic losses, but we never intimated that physical injury was sufficient to take a plaintiff outside the scope of *Robins Dry Dock*. Such an interpretation would turn *Robins Dry Dock* on its head and convert it from "a pragmatic limitation ... upon the tort doctrine of foreseeability," *TESTBANK*, 752 F.2d at 1023, into a decision that would allow a plaintiff to recover from a tortfeasor merely because the injured person was under a contract with the plaintiff. *Cf. Robins Dry Dock*, 275 U.S. at 309, 48 S.Ct. at 135. *TESTBANK* stands for the proposition that physical injury to one's own property is ordinarily *a* prerequisite to recovery in tort—*TESTBANK* does not say or imply that *Robins Dry Dock* is inapplicable to every case in which the plaintiff has suffered a physical injury that is somehow a consequence of the defendant's tortious act or omission.

Cargill also seeks comfort in *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 772 F.2d 1217 (5th Cir.1985). In *Consolidated*, the plaintiff's aluminum reduction plant was damaged when the plant's supply of natural gas was suddenly cut off. The interruption occurred when the defendant inadvertently severed a gas pipeline owned and operated by Texaco, with whom the plaintiff had a contract to supply natural gas to the reduction plant. A panel of our court vacated the district court's grant of summary judgment in favor of the defend-

ant. The plaintiff in *Consolidated* had suffered substantial physical injury to its property as a result of the defendant's allegedly negligent severance of the gas pipeline. The panel emphasized the "limited nature of this appeal," 772 F.2d at 1218 n. 2, and stressed that the district court expressly omitted to review the issue of foreseeability, *id.* at 1221. In response to a petition for rehearing, the panel re-emphasized that summary judgment for the defendant might well be appropriate on the facts of the case and that it was leaving "the application of traditional tort principles, including foreseeability and the related concept of legal duty, for the trial court to determine on remand." *Id.* at 1224.

*Consolidated* does not support Cargill's position. Among the "traditional tort principles" untouched by that decision was the principle, stated and relied on in *Robins Dry Dock*, that "a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong." 275 U.S. at 309, 48 S.Ct. at 135. Justice Holmes' formulation was delivered in different language than we ordinarily use today, but his meaning has not become outdated. There can be no recovery in tort unless the defendant has breached a legal duty owed to the plaintiff. This threshold requirement was not met in the case at bar. If Bethlehem caused or contributed to the malfunction of the SERENA's engine, it did not thereby breach any legal duty owed to Cargill. Whatever rights the SERENA's owner might have against Bethlehem, Cargill could not add itself to the list of proper plaintiffs by showing that its property was physically damaged as a result of the ship's inability to sail. The same idea can be expressed by saying that Cargill's injury and Bethlehem's allegedly wrongful acts were related only in that these acts prevented the SERENA or her owner from performing a contract with Cargill; that the breach of this contract may have arisen directly from Bethlehem's negligent repair of the SERENA's engine could not give

Cargill any right to recovery in tort against Bethlehem. To hold otherwise would be to effect exactly what the *Consolidated* panel expressly sought to avoid: reading *TEST-BANK* to hold that if there is physical damage a claim is necessarily stated, a reading that would create "a brand new theory of recovery for negligent interference with a contract where physical damage occurs solely from the loss of anticipated contract benefits." 772 F.2d at 1224.

In the case at bar, any injury to Cargill's property, physical or otherwise, resulted from the SERENA's being disabled at a time when Cargill expected her to be able to transport Cargill's grain. Any such expectations, however, would have been justified solely because of the contract between Cargill and the owner of the SERENA. To allow Cargill to recover against Bethlehem would therefore violate the rule stated in *Robins Dry Dock;* in modern parlance it would find a breach of duty when no breach had occurred. It follows that the district court properly rendered summary judgment in Bethlehem's favor.

AFFIRMED.