BENAVIDES, Circuit Judge,
concurring in part and dissenting in part:
I join the majority in affirming the award of damages to Corpus Christi for the flared gas and to Houston for the riser, as well as the award of prejudgment interest and taxation of costs. However, the majority’s denial of Corpus Christi’s delay damages resulting from the shut-in under the guise of TEST-BANK ignores controlling authority in this Circuit and forges a new rule of law unintended by TESTBANK and its progeny.[1] I must dissent.
TESTBANK stands for a single proposition: physical damage to a proprietary interest is a prerequisite to recovery for economic loss. 752 F.2d 1019, 1020 (5th Cir.1985) (en banc), cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986). We adopted the “bright-line” TESTBANK rule to exclude entire categories of potential plaintiffs who had suffered only economic harm. These would-be plaintiffs, whose claims were potentially indeterminate and indefinite, created the specter of wave upon wave of successive economic consequences. We drew our bright line with full recognition that some plaintiffs with foreseeable economic injury would be denied recovery. Nonetheless, our rule of law is not only consistent with established precedent, but also with the appropriate adjudicative role of our courts.
Thus TESTBANK operates as a threshold to recovery. Those plaintiffs with physical injury to a proprietary interest may enter; those without may not. This gateway to recovery makes sense. Having satisfied the prerequisite, the rationale for foreclosing relief for economic harm does not apply because the plaintiff no longer belongs to the putative class of indeterminate and indefinite claimants; the plaintiff now belongs to the finite fold of those suffering some physical damage. Simply put, once a plaintiff demonstrates physical damage to a proprietary interest, TESTBANK is simply inapplicable.
Clearing the TESTBANK threshold, however, is not the end of the matter. A plaintiffs right to recovery still hinges on application of traditional tort principles including legal duty and foreseeable injury. These principles, of course, include recovery for foreseeable economic loss caused by a defendant’s negligence. These well-settled princi- *206 pies of negligence, not TESTBANK, control the ultimate outcome.
In this case, we correctly hold that Corpus Christi’s sensible action in flaring gas to save its wells “constitutes the physical damage to a proprietary interest, i.e., its gas, sufficient to satisfy the TESTBANK requirements.” Maj. op. at 202. At this point, Corpus Christi meets the prerequisite; our TEST-BANK inquiry is over. General principles of negligence now govern whether Corpus Christi can recover damages. The majority, however, resurrects TESTBANK and fashions a new requirement that each element of recoverable loss must satisfy TESTBANK I cannot condone this new rule because it ignores the lessons of our previous authority in this area of law.
In crafting this new rule, the majority relies on Consolidated Aluminum. However, the approach this Court took throughout the Consolidated Aluminum litigation is inconsistent with the course the majority chooses today. Consolidated Aluminum sought damages for physical losses as well as attendant economic damages stemming from interruption of gas supply after the defendant negligently severed a pipeline. 772 F.2d 1217, 1222 (5th Cir.1985). The district court granted' summary judgment for the defendant based upon TESTBANK We reversed stating: “Consolidated plainly suffered physical harm to property in which it has a proprietary interest — i.e., its own equipment for deriving aluminum. Thus, TESTBANK does not apply.” Id. We further explained that the TESTBANK rationale for foreclosing relief for economic harm was simply inapplicable because the number of potential plaintiffs was neither indeterminate nor infinite. Id. at 1223.
Having cleared the TESTBANK hurdle, we instructed the district court to resolve the issue of Consolidated’s right to recovery under traditional tort principles. In reaching this conclusion, we relied on the Restatement (Second) of Torts. We quoted in toto comment b to section 766C that makes clear that if there is physical harm, the general rule prohibiting recovery for negligent interference with contractual relations does not apply and there may be recovery subject to the general rules governing liability for negligence.[2] See id. Furthermore, we erased any doubt about our approach in our per curiam opinion denying rehearing. After reiterating that TESTBANK was inapplicable because Consolidated suffered physical harm, we “left the application of traditional tort principles, including foreseeability and the related concept of legal duty, for the trial court to determine on remand.” Id. at 1224.
On remand, the district court found that the defendant was not liable for the damage to Consolidated because it was an unforeseeable consequence of the rupture of the pipeline. 639 F.Supp. 1173, 1183 (W.D.La.1986), aff'd, 833 F.2d 65 (5th Cir.1987), cert. denied, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). The court relied on the peculiar facts of that case. For example, Consolidated’s plant was located six miles away from the point of rupture, on a different body of water, and upstream in the gas distribution system. Additionally, the defendant had no knowledge of Consolidated’s connexity to the pipeline. Finally, Consolidated was so far outside the zone of obvious danger that no reasonable person would have anticipated that a rupture of the pipeline would cause damage to “such a remotely located plant.” Id.
On appeal after remand, a different panel of this Court, per then Judge Politz, now Chief Judge, affirmed. 833 F.2d 65 (5th *207 Cir.1987), cert. denied, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). We agreed with the district court that the defendant could not have anticipated that its failure to follow safe dredging practices would result in physical damage to a plant several miles away. Id. at 68. Significantly, we did not resurrect TESTBANK and use it to foreclose Consolidated’s recovery. Rather, we reaffirmed our commitment to a two-step approach. Initially, TESTBANK must be applied. Once satisfied, application of traditional tort principles then determines recovery.
We used a similar approach in Domar Ocean Transp. v. M/V ANDREW MARTIN, 754 F.2d 616 (5th Cir.1985). Domar owned a tank barge and leased a tug to tow it. While in tow, the Domar barge was struck by another towed by the Andrew Martin. Domar recovered delay damages for lost profits from the use of both the barge and the leased tug. Andrew Martin appealed contending that TESTBANK barred recovery for the loss of use of the tug because it suffered no physical damage. This Court rejected this argument and affirmed the damage award. We held that Domar had a proprietary interest in the barge-tug unit noting that it was indisputable “that they functioned as an integrated unit.” Domar, 754 F.2d at 619. Consequently, “TEST-BANK is no bar to Domar’s recovery for the loss of use of the unit.” Id. Finding no solace in TESTBANK, Andrew Martin argued, as a matter of law, Domar’s damages for loss of use of the undamaged tug were too tenuous and remote to be reasonably foreseeable. Again, we rejected the argument. Judge Higginbotham, author of TESTBANK, wrote for the panel: “On these facts, that Domar’s damages were foreseeable is implicit in the conclusion that the test of TESTBANK is met.” Id.
In the ease before us today, Corpus Christi suffered two types of economic damages: flared gas and delay damages from the shut-in. Having satisfied the TESTBANK prerequisite, Consolidated Aluminum and Do-mar instruct that fundamental negligence principles determine Corpus Christi’s recovery. Applying traditional tort principles, these economic damages are recoverable unless they are unforeseeable or casually unrelated to the allision. When Zapata’s barge collided with the Corpus Christi platform it damaged the gas riser. This necessitated Corpus Christi’s prudent action in flaring gas to avoid permanent damage to the well. Is it unforeseeable that Corpus Christi would also suffer economic damages from a shut-in caused by a need to repair the gas riser? Certainly not. The damages from both the flared gas and the subsequent shut-in directly flow from the allision. This is not a situation, as presented in Consolidated Aluminum, where the damages occur in some remote location unknown and unseen by the tortfeasor. The Zapata barge ran into the Corpus Christi platform and the attached riser directly leading to both the flared gas and necessary shut-in.
In stripping Corpus Christi of its recovery for delay damages caused by the shut-in, the majority stresses that these losses were not “tied” to damage to Corpus Christi’s property. The majority maintains that the only property of Corpus Christi that was damaged was the flared gas. ' Corpus Christi’s ownership interest in the gas riser, however, is not dispositive as Domar makes clear. The gas riser, while owned by Houston, was permanently connected to the northeast leg of Corpus Christi’s platform. Thus the riser operates as an integrated unit with the platform. Under Domar, Corpus Christi, while not the owner of the riser, can recover its foreseeable economic damages.
The new rule of recovery that the majority creates is not dictated by either the holding or rationale of TESTBANK. It is inconsistent with the approach this Court has used in both Consolidated Aluminum and Domar. Having satisfied the TESTBANK inquiry, Corpus Christi should be allowed to recover all foreseeable economic damages that flow from the allision under traditional tort principles. Contrary to the majority’s claim, allowing this recovery does not abrogate the bright line rule of TESTBANK Rather, it is the majority’s new layer of TESTBANK analysis that clouds the water TESTBANK and its progeny have made clear. I would *208 affirm the award of the foreseeable delay damages to Corpus Christi.

. The delay damages were based upon the loss in present value of the deferred production. No attack against these damages or the amount thereof is made by the appellant except for the attack based on TESTBANK.

. This comment is as follows:
b. Physical harm to the other. The rule stated in this Section applies when the plaintiff suffers only pecuniary loss, such as the loss of the financial benefits of a contract or of prospective trade or financial loss through being put to additional expense. If there is physical harm to the person or land or chattels of the plaintiff, the rule stated in this Section does not apply and there may be recovery for negligence that results in physical harm because of the nonperformance of a contract with the plaintiff. (Cf. §§ 435B, 499). This recovery is of course subject to the usual rules governing liabilhy for negligence. When recovery is allowed, the loss of expected profits or other pecuniary loss may, in an appropriate case, be recovered as "parasitic" compensatory damages.
Restatement (Second) of Torts § 766C cmt. b (1979).