**CONSOLIDATED ALUMINUM CORP.,**
**Plaintiff-Appellant,**

v.

**C.F. BEAN CORP., et al.,**
**Defendants-Appellees.**

No. 86–4657.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1987.

Rehearing and Rehearing En Banc
Denied Jan. 5, 1988.

Eckert, Seamans, Cherin & Mellott, Donald C. Winson, Howard D. Schwartz, Jennifer L. Wilson, Pittsburgh, Pa., Plauche, Smith & Nieset, A. Lane Plauche, Lake Charles, La., for Consolidated Aluminum Corp.

Deutsch, Kerrigan & Stiles, Cornelius G. Van Dalen, Allen F. Campbell, New Orleans, La., for C.F. Bean Corp. et al.

Woodley, Barnett, Cox, Williams & Fenet, Clayton A.L. Davis, Edgar F. Barnett, Lake Charles, La., for Highlands Ins. Co.

Faris, Ellis, Cutrone & Gilmore, Mat M. Gray, III, New Orleans, La., for St. Paul Fire & Marine Ins., Inc.

Frederick W. Veters, C. Suzanne Dittmer, New Orleans, La., for Texaco, Inc.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

This case returns after remand, 772 F.2d 1217 (5th Cir.1985), with Consolidated Aluminum Corporation appealing a benchtrial judgment rejecting its claims against C.F. Bean Corporation and Bean Dredging Corporation (collectively Bean), 639 F.Supp. 1173 (W.D.La.1986). Consolidated seeks recovery for physical damage to its aluminum manufacturing facilities and for attendant economic loss caused by the interruption of its supply of natural gas. Its gas supply was suddenly terminated when a Bean dredge negligently ruptured a Texaco pipeline, causing Texaco to close the nearest valves to stem the flow of escaping gas. In the first appeal Consolidated sought and secured reversal of a summary judgment in favor of Bean. The district court initially concluded that the rule of *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), as expanded by this court in *Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir.1985) (en banc), *cert. denied, sub nom. White v. M/V TESTBANK,* — U.S. —, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), mandated a summary dismissal. We concluded that the "bright line" rule of *Robins Dry Dock* and *TESTBANK* "does not reach the instant case and that a plaintiff's claim of negligence for physical damages to equipment in which the plaintiff has a proprietary interest should be analyzed under tort principles applied by this Court in admiralty." 772 F.2d at 1218.

*Background*

The facts are set forth in detail in our prior decision and in the opinion on remand. We note only the most salient. On April 5, 1980, around 7:00 A.M., Bean was dredging the Calcasieu River Ship Channel near Lake Charles, Louisiana, pursuant to a contract with the United States Corps of Engineers. The contract warned Bean of the location of Texaco's twelve-inch, high-pressure, natural gas pipeline, which traversed the channel to service a nearby PPG Industries, Inc. plant. Bean had submitted a plan for dredging in the vicinity of structures and utilities crossing or adjacent to the channel. The plan comported with industry safety practices but the dredging crew failed to follow its procedures. As a result of the crew's negligent lapse, the dredge's cutterhead struck and ruptured the Texaco pipeline, allowing the escape of a large amount of gas.

The rupture caused an immediate drop in the pressure in the pipeline. To stem the flow, Texaco closed the nearest upline block valves. Unfortunately for Consolidated, whose aluminum reduction plant was located approximately six miles from the rupture site, the closing of the valves cut off its supply of natural gas. The sudden termination of natural gas flow, Consolidated's only energy source for its electrical generators, caused substantial physical damage to Consolidated's plant and work-in-progress, plus an estimated equal amount of economic loss.

Consolidated's aluminum reduction plant is the smallest in the United States. It has the unique distinction of having only one energy source for the generation of the electricity used in its operation. The record reflects that aluminum reduction plants follow the universal practice of having a readily-available, alternate energy source. This practice avoids the risk of the very damages that Consolidated sustained as a result of the unprogrammed shut down. When the plant near Lake Charles, Louisiana was built, a calculated judgment was made—no alternate energy source, such as fuel oil, was provided, despite the fact that the generators installed could operate on either natural gas or fuel oil.

Consolidated filed suit against Bean and Texaco, and their insurers, and the Corps of Engineers, alleging tort and contract claims, and invoking admiralty and diversity jurisdiction. Consolidated's claims against Bean were first dismissed, as noted, on the motion for summary judgment. We remanded for reconsideration by the trial court and application of traditional tort principles, including "foreseeability and the related concept of legal duty." 772 F.2d at 1224.

After trial, the district court awarded Texaco judgment against Bean for damage to its pipeline and for the value of the gas lost. Consolidated's demands against Bean were rejected on findings and conclusions that its damages were unforeseeable and, consequently, were not within the protected ambit of the duty imposed on Bean to dredge in a non-negligent manner. Consolidated appeals. We affirm.

## Analysis

■■■ The analysis of a maritime tort is guided by general principles of negligence law. *Casaceli v. Martech Int'l., Inc.*, 774 F.2d 1322 (5th Cir.1985); *Daigle v. Point Landing, Inc.*, 616 F.2d 825 (5th Cir.1980). Under those principles a tortfeasor is accountable only to those to whom a duty is owed. *Watz v. Zapata Offshore Co.*, 431 F.2d 100 (5th Cir.1970); 57 Am.Jur.2d *Negligence* § 33 (1971).

Determination of the tortfeasor's duty, and its parameters, is a function of the court. Green, *Proximate Cause in Texas Negligence Law*, 28 Tex.L.Rev. 775 (1950). That determination involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party. *Prosser and Keeton on Torts, Duty* § 53 (5th ed. 1984); Green, *The Duty Problem in Negligence Cases*, 28 Col.L.Rev. 1014 (1928); 29 Col.L.Rev. 255 (1929). The foreseeability factor persuaded the trial court. We also find that factor decisive. The critical inquiry is the foreseeability of the injury to Consolidated resulting from Bean's negligent dredging operation. The answer to that question largely defines the duty, if any, owed by Bean to Consolidated.

"Duty ... is measured by the scope of the risk that negligent conduct foreseeably entails." Harper, James & Gray, *The Law of Torts, Scope of Duty in Negligence Cases* § 18.2 at 655 (2d ed. 1986). The duty "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct, and not to other interests even of the same plaintiff which may in fact happen to be injured." Id. at 660 (interpreting dicta in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 347, 162 N.E. 99, 101 (1928)). For, as the eminent commentator and scholar Wex S. Malone observed in his Ruminations on Cause-in-Fact, collected in his *Essays on Torts*, p. 172 (1985), first published 9 Stan.L.Rev. 60 (1956):

All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect *some* persons under *some* circumstances against *some* risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises (emphasis in original).

Foreseeability obviously marks the limits placed on a defendant's duty; the precise meaning of the concept is vital. As negligence law developed in England the concept became "whether any ordinarily prudent man would have foreseen that damage would probably result from his act." F. James & R. Perry, *Legal Cause*, 60 Yale L.J. 761, 786 (1951) (*quoting* 8 W. Holdsworth, *A History of English Law* 450 (2d ed. 1937)). Modern courts have given the concept varying meanings.[1] One scholar

---

1. For example, *see, Words and Phrases, Foreseeability* (1953) ("reasonable anticipation that harm or injury is a likely result of acts or omissions." *Emery v. Thompson*, 148 S.W.2d 479, 480, 347 Mo. 494 (1941)); *Words and Phrases, Foreseeability* (1987) ("that which is objectively reasonable to expect, not merely what might conceivably occur." *Augenstine v. Dico Co., Inc.*, 481 N.E.2d 1225, 1228, 90 Ill.Dec. 314, 317, 135 Ill.App.3d 273 (1st Dist.1985)); "whether the injury or an injury similar in general

might reasonably have been anticipated as a natural and probable result of negligent act or acts." *Geo. D. Barnard Co. v. Lane*, 392 S.W.2d 769, 771 (Tex.Civ.App.1965); "consequence which is probable according to ordinary and usual experience." *Wyatt v. Motsenbocker*, 360 S.W.2d 543, 546 (Tex.Civ.App.1962); "one which prudent man would anticipate as likely to result from an act" *Firestone Tire & Rubber Co., Inc. v. Lippincott*, 383 So.2d 1181, 1182 (Fla.App.1980);

assigned an almost generic definition, "the anticipation of harm of a *general sort* to persons of a *general class*." Harper, *The Foreseeability Factor in the Law of Torts*, 7 N.D.Law. 468, 482 (1932) (emphasis in original).

Foreseeability guided our decision in *Republic of France v. United States*, 290 F.2d 395 (5th Cir.1961) in which a fire in the ship's cargo of fertilizer grade ammonium nitrate was followed by an explosion. The explosion was unprecedented; there was no general knowledge of the explosive nature of nitrate when exposed to fire. Although the vessel owners were negligent in handling the fire, we exonerated them from liability for the injuries caused by the explosion, concluding that because of the unknown volatility of the cargo, the shipowners reasonably could not have foreseen that explosion. We held that to be found liable a defendant must have "knowledge of a danger, not merely possible but probable ..." 290 F.2d at 401 (*quoting Dalehite v. United States*, 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427 (1953) (citations omitted)).

Other commentators muse that "foreseeability ... includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct." Harper, James & Gray, *The Law of Torts, Scope of Duty in Negligence Cases* § 18.2 at 657–59 (2d ed. 1986).

We perceive a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

Applying this definition, we are not persuaded that Bean could have anticipated that its failure to follow safe dredging practices would likely result in physical damage to the equipment and work-in-progress at Consolidated's aluminum reduction plant several miles away. The harm was not of a general sort expected to follow from the failure to dredge carefully in proximity to a gas pipeline. Injury to property and persons from the escaping gas, or from a fire which might have ensued, would be examples of consequences that would be foreseeable.[2] The damages sustained by Texaco obviously were foreseeable. But the damage arising from the loss of natural gas supply, in turn causing the shut down of electric turbines, in turn causing a loss of electric power vital to the aluminum reduction process, with the ultimate result being substantial damage to equipment and product-in-process, goes beyond the pale of general harm which reasonably might have been anticipated by negligent dredgers.

We find no error in any factual finding or legal conclusion inherent in the trial court's ruling that the damages suffered by Consolidated were not foreseeable and, as such, not within the reach of the duty imposed on Bean to perform its dredging operations in a non-negligent manner. The judgment of the district court is therefore AFFIRMED.

"anticipation of a general category of harm which in ordinary experience might be expected to flow from a particular type of negligence." *Garrett v. United States*, 501 F.Supp. 337, 339 (D.C.Ga.1980).

**2.** Of interest is the rejection of the claims of PPG Industries, Inc. for its loss incurred in purchasing replacement gas at a higher cost during the period of repair of the pipeline. The PPG plant was adjacent to the channel and was the entity being served by the lateral pipeline. The Louisiana Supreme Court concluded that this risk was outside of the duty imposed on Bean. *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La.1984).