**In the Matter of the Complaint & Petition of LLOYD'S LEASING LTD., as Owner & Cammel Laird Shipbuilders, Ltd., and Alvenus Shipping Co., Ltd., As Charterers or Owners Pro Hac Vice, of the M/T ALVENUS, Her Engines, Tackle, etc., In a Cause of Exoneration From or Limitation of Liability.**

No. Civ. A. G–84–293.

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 22, 1988.

Charles R. Houssiere, III, Houston, Tex., for White, et al.

Mike Gallagher, Fisher, Gallagher, Perrin & Lewis, Houston, Tex., for J.L. Sasser.

Susan Thiesen, Asst. Atty. Gen., and Ben F. McDonald, Jr., Sp. Asst. Atty. Gen., Atty. General's Office, Austin, Tex., for State of Tex.

H.S. Morgan, Jr., Theodore G. Dimitry, Vinson & Elkins, Houston, Tex., for Conoco.

George W. Lederer, Jr., Paul W. Wommack, Ralph K. Harrison, The Woodlands, Tex., for Mitchell Development Corp. of the Southwest, Mitchell Realty Co., The Fort Crockett Hotel Ltd., and George P. Mitchell.

Charles Houssiere, Houssiere & Durant, Houston, Tex., for Earl Stark.

Steve Williams, for City of Galveston.

Ervin A. Apffel, Jr., McLeod, Alexander, Powel & Apffel, Galveston, Tex., for Mitchell Duncan, Ski Trek, Inc. and City of Galveston.

Gordon Speights Young, Jack Shepherd, Houston, Tex., R. Scott Blaze, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.A., U.S. Army Corps of Engineers, Colonel Eugene Witherspoon.

G. Byron Sims, Houston, Tex., for third party defendant Simrad, Inc.

Beck Smith, Smith & Stowers, Galveston, Tex., for David Richard, Theo Carroll White, Charles Richard and Billy Kesel.

Lester J. Lautenschlaeger, Jr., Lautenschlaeger & Oberhelman, New Orleans, La., for third party defendant Malcolm Gillis and Lake Charles Pilots, Inc.

James Patrick Cooney, John M. Elsley, Royston, Rayzor, Vickery & Williams, Houston, Tex., for third party Silver Line, Ltd. and Silver Navigation, Ltd.

## MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

The genesis of the current limitation of liability action before the Court is to be found in 1984 when the M/T ALVENUS, on a voyage from Venezuela to Lake Charles, Louisiana, sustained a crack in her hull while in the Calcasieu Pass Channel of the Gulf of Mexico. The epicenter of the resultant oil spill was approximately seventy miles distance from Galveston, Texas, and took several days to reach the coastal city. Over 375 "Galveston" claimants have

filed claims against petitioners alleging damages of varied and sundry natures.

Petitioners have filed four motions for summary judgment, two of which were granted by this Court on November 20, 1987. Claimants, in response, have filed a joint motion to vacate and set aside the November orders. Six of the claimants have also filed a motion for class certification. The ensuing responses and replies have become "fragmented" and have led "to a confused presentation." Conoco's Reply Memorandum to Pollution Claimants' Responses to Motion for Summary Judgment. In order to clarify the present legal and factual conundrum, the Court will lay forth the legal principles by which it will decide the case *sub judice.*

Petitioners have placed the claimants in three categories based on the alleged damage suffered.[1] The Court, although declining to follow petitioners' classification scheme, will, likewise, categorize the claimants in question according to damages suffered. Claimants will be classified in the following manner:

(1) those who suffered economic loss exclusive of physical damage;

(2) those who suffered "tracking" damages and resultant economic loss; and

(3) those who suffered direct physical impact damages and resultant economic loss.

Thus, two of the three groups of claimants have suffered some type of physical damage in addition to the alleged economic loss.

As to the first category of claimants, *State of Louisiana ex rel Guste v. M/V Testbank,* 752 F.2d 1019 (5th Cir.) (en banc), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986) controls. The Court, in *Testbank,* held that "physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional maritime tort." 752 F.2d at 1020. The claimants in the first category are, therefore, precluded from seeking economic damages and the Court's

---

1. A fourth category is based upon a group of claimants who allegedly failed to respond to petitioners' interrogatories. As to this fourth category, petitioners seek default judgments.

summary judgment order of November 20, 1987, dismissing claimants therein will be left undisturbed. Those claimants who are of the opinion that they should not be considered under the first category of claimants as delineated by the Court should file individual, specific motions for reconsideration within twenty (20) days of the date of this order.

In *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 772 F.2d 1217 (5th Cir. 1985), the Court determined that *Testbank* did not apply because plaintiff had "suffered physical harm to property in which it [had] a proprietary interest." *Id.* at 1222. The harm to plaintiff in *Consolidated* consisted of damage to the physical equipment at plaintiff's aluminum plant. *Id.* at 1218. The Fifth Circuit remanded the case for analysis under traditional tort principles applied in admiralty. *Id.* On a second appeal, the Fifth Circuit affirmed the trial court's finding that the damage to plaintiff in *Consolidated* was not foreseeable as a matter of law. *Consolidated Aluminum Corp. v. C.F. Bean*, 833 F.2d 65, 68 (5th Cir.1987), *aff'g*, 639 F.Supp. 1173 (W.D.La. 1986). The Fifth Circuit, in affirming the district court, perceived harm

> "to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention."

*Consolidated*, 833 F.2d at 68. Applying the above definition, the Court concluded that the damage to plaintiff was "beyond the pale of general harm which reasonably might have been anticipated...." *Id.*

■ In 1984, the vagaries of winds and currents caused the beaches of Galveston and the surrounding areas to be inundated with crude oil from a cracked tanker hull seventy miles away. The second category of claimants suffered physical damage as a result of third parties "tracking" oil into

claimants' businesses and condominiums and onto the personal property therein. "To be found liable, a defendant must have 'knowledge of a danger, [the danger is] not merely possible but probable....'" *Id.* (citing *Republic of France v. United States*, 290 F.2d 395, 401 (5th Cir.1961)). In view of the above interplay of human intervention and Nature's capriciousness, the Court finds as a matter of law that the damages, both physical and economic, resulting from the tracking of oil were not foreseeable. In this instance, the tracking damages were indeed possible, but in no fashion probable. The element of third-party intervention that allowed the oil to be carried from the beaches to the claimants' businesses and condominiums broke the chain of foreseeability. The Court, therefore, modifies its partial summary judgment order of November 20, 1987, so as to DISMISS claimants, not just certain claims, who seek damages for physical and economic damages.[2]

■ A companion order will be entered dismissing claimants who seek, in addition to tracking damages, recovery for damage to the public beaches such as loss of sand, loss of beach, loss of vegetation and the alleged resultant economic loss. The party to seek damages of this nature is the State of Texas, not private citizens. Furthermore, the Park Board of Trustees of the City of Galveston is REINSTATED in the current cause as a claimant. Prior summary judgment orders entered against the Park Board are, therefore, VACATED, but only insofar as they affect the Park Board, unless otherwise stated. Finally, claimants who are of the opinion that they do not fall into this second category of claimants shall file individual, specific motions for reconsideration within twenty (20) days of the date of this order.

■ The direct physical impact of oil on various instrumentalities, e.g. the hulls of boats, was precipitated without the aid of third-party human intervention but, instead, flowed directly from the M/T AL-

---

**2.** The Court finds that the damages sought pursuant to theories of intentional tort and public or private nuisance are simply not sustainable under the pleadings of this case nor under *Testbank*. *See Testbank*, 752 F.2d 1019, 1030–31.

VENUS via currents and waves. The foreseeability chain, in regard to direct physical impact damages, remains unbroken and petitioners, therefore, liable. Under *Consolidated*, 833 F.2d at 68, the Court finds that both physical and economic damages sustained as a result of the direct physical impact of oil are recoverable. Sea–Arama, Inc., who seeks recovery for costs incurred in the removal of oil from water intake valves and the resultant economic damages, will be allowed to continue as a claimant in the present case. Prior summary judgment orders entered against Sea–Arama are, therefore, VACATED. Such orders are vacated only as to Sea–Arama, Inc., unless otherwise stated. All claimants who have suffered direct physical impact damages, as described above, and have been dismissed in prior summary judgment orders shall file individual, explanatory motions for reconsideration within twenty (20) days of the date of this order.

█ Claimants' motion for class certification on behalf of James Bates, et. al., fails in several respects. Under Rule 23(a)(1), Fed.R.Civ.P., a class action may be maintained if "the class is so numerous that joinder of all members is impracticable." Since 1984, only six claimants in the class seeking certification, shrimpers in Galveston, Harris and Chambers County, have come forth. No credible attempt has been made by movants to demonstrate that the six claimants are representative of a vastly larger "hidden" class of shrimpers who have failed to file actions as claimants. The publicity surrounding the *Alvenus* oil spill and the necessary prerequisites, including repeated notices in local papers, to the petition for limitation of liability would seem to have brought forth those shrimpers who a interested in pursuing their claims. Certification of a class of shrimpers at this late date would in no way advance the litigation of this cause or protect the rights of a possible class. Furthermore, in *Lykes Bros. Steamship Co., Inc. v. Tug Bayou La Fourche*, 1974 A.M.C. 1783, 1786 (S.D.Tex.1974), Judge Singleton found a "class claim" inappropriate and directly contrary to the purpose of a limitation suit. The Court, for these reasons, respectfully DENIES claimants' motion for class certification at this time.

Finally, the Court, on the basis of the record as it currently exists, DENIES petitioners' motion for entry of default judgment against those claimants who have failed to respond to petitioners' interrogatories. Claimants who have failed to respond are, hereby, ORDERED to RESPOND within twenty (20) days of the date of this order. Failure to respond will, once again, subject these claimants to dismissal.