United States Court of Appeals,

Fifth Circuit.

No. 94-60537.

CORPUS CHRISTI OIL & GAS COMPANY and Corpus Christi Hydrocarbons
Company, Plaintiffs-Appellees,

v.

ZAPATA GULF MARINE CORPORATION, et al., Defendants.

GULF FLEET SUPPLY VESSELS INC., et al., Defendants-Third Party
Plaintiffs-Counter Defendants-Appellants,

v.

HOUSTON PIPE LINE CO., Defendant-Counter-Claimant-Third Party
Defendant-Appellee.

Dec. 27, 1995.

Appeal from the United States District Court for the Southern
District of Texas.

Before JOLLY and BENAVIDES, Circuit Judges, and FITZWATER[*],
District Judge.

E. GRADY JOLLY, Circuit Judge:

In early November of 1989, the offshore towboat GULF STAR,
operated by Zapata Gulf Marine Operators and crewed by Zapata Gulf
Marine Services Corp., was tied to a docking platform in the Gulf
of Mexico, waiting for a storm from the north to pass. As the GULF
STAR prepared to maneuver, its mooring lines parted, and it and the
construction barge to which it was connected began drifting south
with the wind and waves toward a gas and condensate producing

---

[*]District Judge of the Northern District of Texas, sitting
by designation.

1

platform, owned by Corpus Christi[1]. The tug and barge bore down on the platform, while the GULF STAR's captain tried in vain to halt the barge's drift with the tug's ailing engines, or to reel in the barge with the tug's winch. Although the captain slowed the barge, in the end he could not avert an allision between the barge and the Corpus Christi platform. The allision damaged a gas riser connected to the platform, owned by Houston Pipeline Company ("Houston"). Corpus Christi sued the Zapata defendants ("Zapata"), and the district court found Zapata liable to Corpus Christi and Houston for damages they incurred as a result of Zapata's negligence. We affirm in part and reverse in part the award of damages to Corpus Christi, affirm the award of damages to HPLC, and affirm the award of prejudgment interest to Corpus Christi and Houston, and the taxation of costs to Zapata.

I

The Corpus Christi platform is located in the Gulf of Mexico, about eight miles from Port O'Connor, Texas. Attached to a leg of the platform is a riser, a vertical pipe through which flows gas and gas condensate. The riser is owned by Houston. The riser connects to a pipeline, also owned by Houston, that runs eight miles from the platform to the beach. Although other risers attached to the platform were fitted with riser guards to prevent damage from allisions, the riser damaged in the allision lacked any

[1]"Corpus Christi" refers collectively to the plaintiffs associated with the platform, including Corpus Christi Hydrocarbons Co. and PG & E Resources Offshore Co., which was formerly known as Corpus Christi Oil & Gas Co.

sort of protection.

Workers on the Corpus Christi platform foresaw the allision and promptly shutdown operations to prevent a fire or explosion. The force of the allision crushed the concrete riser coating and damaged the riser. Houston ordered Corpus Christi to shut in its wells so that it could inspect the riser and replace the damaged section. The repair took two weeks, during which time Corpus Christi could not use the riser to convey its gas. During the repairs, Corpus Christi flared gas to prevent the loss of the wells.

The district court conducted a bench trial. At its close, the district court allocated fault for damage to the riser two-thirds to Zapata, and the remaining one-third, collectively, to Corpus Christi and Houston.[2] Zapata argued at trial—and now argues on appeal—that Corpus Christi did not sustain physical damage to any proprietary interest; thus, under the "bright line" rule of this circuit announced in *Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir.1985) (en banc), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), may not recover its losses incurred due to Zapata's negligence. In support of its argument, Zapata notes that Corpus Christi did not own the damaged riser, and that it voluntarily flared the gas, the cost of which it now seeks

_____

[2]The district court found Houston negligent for failing to protect the riser from accidental vessel damage, and Corpus Christi negligent either for failing to review plans for the riser before allowing Houston to attach the riser, or failing to require Houston adequately to protect its riser before allowing Houston to attach the riser.

3

to recover. Zapata does not dispute, however, that Corpus Christi would have incurred great harm to its wells if it had not flared the gas during Houston's repair of its riser.

The district court held that the flaring of the gas constituted physical damage to a proprietary interest of Corpus Christi, thus permitting Corpus Christi to avoid the *TESTBANK* bar. The court reasoned as follows:

> 8. [T]he gas flared by [Corpus Christi] when [Houston] shut in the platform constitutes the physical damage necessary for [Corpus Christi] to trump *TESTBANK* 's restrictive approach to recovery in maritime tort. Because plaintiffs had to shut in their wells and flare gas to keep from losing those wells while [Houston] repaired its riser, the proprietary interest of plaintiffs in their wells and gas is sufficient to enable them to recover for their loss.

> 9. While the gas was flared voluntarily by plaintiffs after the allision with [Houston's] riser, it was flared in order to prevent the wells themselves from being lost. Had plaintiffs done nothing, their wells would have sustained perhaps permanent physical damage as a direct result of the allision—such physical damages clearly would have enabled plaintiffs to recover from the Zapata defendants. However, had plaintiffs not flared gas and had they instead allowed their wells to be lost, their damages would have been reduced by the amount of damages which could have been mitigated by flaring. Thus, the "voluntary" flaring does not bar recovery, as defendants urge, but rather demonstrates that plaintiffs mitigated their damages. * * *

> 10. * * * In the case at bar, ... the plaintiffs suffered physical harm: plaintiffs were forced to burn, or flare, gas in order to avert structural damage to their wells.

Second Amended Findings of Fact and Conclusions of Law at 4-5.

The district court thus awarded to Corpus Christi the value of the gas and condensate that was flared. In addition, the district court awarded Corpus Christi the revenue lost while its wells were shut in for the repair of the riser. The proportionate share of these items amounted to $232,628.64. With respect to Houston, the

4

district court awarded its actual costs of repair and the value of gas that was lost. The proportionate share of these items amounted to $203,999.97. Finally, the district court determined that Corpus Christi and Houston both were entitled to prejudgment interest, and it taxed litigation costs against Zapata.

## II

## A

In *Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465, 1473 (5th Cir.1991), we reviewed a district court's application of the rule of law announced in *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927), and reaffirmed by this court in *TESTBANK.* Noting the applicable standard of review, we wrote:

> It is well settled law that, as in most federal actions, in maritime actions the "clearly erroneous" rule applies to the review of the factual findings of the trial court. Thus we must accept the district court's findings of fact unless, upon reading the record and examining the exhibits, we are convinced that they are demonstrably incorrect. Fed.R.Civ.P. 52(a); *Candies Towing Co., Inc. v. M/V B & C ESERMAN,* 673 F.2d 91, 93 (5th Cir.1982).

*Pennzoil,* 943 F.2d at 1469.

## B

The damages award in this case had three components—the cost of gas flared by Corpus Christi to preserve the wells, the revenue lost by Corpus Christi during the period of the riser's repair, and the cost incurred by Houston of repairing the damage to the riser. We address each award in turn.

## (1)

Zapata argues that Corpus Christi suffered no physical damage

5

from the allision, and is therefore entitled to no damages award. In the alternative, it argues that, if the flaring of the gas (in order to save the wells) suffices as physical damage, then Corpus Christi is entitled only to the costs incurred by the voluntary flaring of gas, and not the purely economic loss in gas production for the two weeks while Houston repaired its riser.

In this circuit, an admiralty plaintiff cannot recover negligently inflicted economic losses where there is no physical damage to the plaintiff's property. *TESTBANK,* 752 F.2d at 1020. In *TESTBANK,* we reviewed a summary judgment entered against numerous plaintiffs, each claiming purely economic losses arising from a spill of a toxic chemical in the Mississippi River Gulf outlet. Later, in *Consolidated Aluminum Corp. v. C.F. Bean Corp.,* 772 F.2d 1217 (5th Cir.1985), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) a panel of this court reviewed *TESTBANK,* noting:

> The "character of the interest harmed" for which the plaintiffs sought relief in *TESTBANK* was solely economic. Given this character of the interest harmed, the Court reaffirmed the holding of this Court that physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss in cases of unintentional tort. The Court emphasized that to abandon the physical injury requirement would impose a "limitless type of liability," and the result would be wave upon wave of successive consequences. The Court also noted the corresponding difficulty to courts in managing such economic claims on a discrete basis under traditional tort principles. Thus, where the character of the interest harmed was solely economic, the Court held that no recovery could be allowed under *Robins* as a "pragmatic limitation upon the tort doctrine of foreseeability."

*Consolidated,* 772 F.2d at 1222 (internal citations and some quotation marks omitted).

6

Corpus Christi points out that in *Consolidated,* we held that physical damage that was a *consequence* of an accident was sufficient to satisfy *TESTBANK* 's requirement. In that case, Consolidated Aluminum Corporation's plant machinery was damaged by the slowing of the flow of gas that was caused by Bean's negligent puncture to a pipeline some six miles from Consolidated's facility. We held that Consolidated had stated a claim for physical damages to its machinery as a result of Bean's negligence and that, therefore, *TESTBANK* did not preclude Consolidated's recovery of associated economic losses. *Consolidated,* 772 F.2d at 1222.

Corpus Christi also points to *Pennzoil,* a case factually similar to the one at bar. There we held that damage to a well resulting from the *failure* to flare gas after a well was shut in following an allision constituted the kind of physical damage that made the *TESTBANK* bar inapplicable. *See Pennzoil,* 943 F.2d at 1473. Corpus Christi argues that here, it did "what this Circuit told Pennzoil it should have done"—flared the gas and prevented the loss of its wells.

We think that it does no violence to *TESTBANK* or its underlying principles to find recovery appropriate in the case before us. Except for its acts in mitigation, Corpus Christi would have suffered great physical damages to its wells as a result of Zapata's negligence. *TESTBANK* must not be construed as mandating the narrow and impractical result urged by Zapata: finding a defendant free of liability when the plaintiff incurs losses, although "voluntarily" so, that nevertheless are directly

7

attributable to its efforts to avoid the physical damages that would have rendered that defendant liable for much larger sums. We therefore agree with the district court that Corpus Christi's costs incurred in flaring the gas to save its wells constitutes the physical damage to a proprietary interest, i.e., its gas, sufficient to satisfy the *TESTBANK* requirements. Corpus Christi is thus entitled to $58,613, representing the economic loss it suffered because of the flaring of the gas, to be reduced by one-third (reflecting the amount of Corpus Christi's own negligence), for a total award of $39,075.33.

(2)

We disagree, however, that Corpus Christi is further entitled to damages resulting from its inability to produce and sell its gas in the two weeks during which Houston repaired its riser. *TESTBANK* denies recovery for pure economic losses not associated with physical injuries. Although we hold that the recovery Corpus Christi seeks for its flared gas is based upon injury to its property—that is, its gas—no such argument can be made with respect to the purely economic losses resulting from failure to sell its gas during the two-week repair. That gas remains in the ground, unaffected by the property damage suffered by Corpus Christi, that is, the gas that was flared. The additional economic losses that Corpus Christi seeks to recover occurred solely and only because of the physical damage *that was done to Houston's property,* i.e., the riser, which shut down Houston's pipeline. Corpus Christi lost its gas sale profits because it could not use the pipeline, not because

it was flaring its own gas.

We recognize that, although *TESTBANK* suggests an association between recovery sought and damage to the plaintiff's property, it left undecided the degree of association required. Neither did *Consolidated* clearly resolve this question. It simply made clear that economic losses that flowed directly from the physical damage to Consolidated's property were recoverable. In the present case, however, we are squarely presented with the question of whether the principle of *TESTBANK* —that is, a limitation on the doctrine of foreseeability[3]—requires that recoverable economic damages have some direct tie to the plaintiff's specific physical loss or damage, or whether the *TESTBANK* principle simply requires a showing of damage to some proprietary interest of the plaintiff, in order to open the door to recovery for *all* purely economic damages that were foreseeable from the initial tort. For help in answering this question, we turn first to the principles underlying *TESTBANK*.

In *TESTBANK,* when considering the basis of the subject rule, we explained as follows:

> *Robins* broke no new ground but instead applied a principle ... which refused recovery for negligent interference with "contractual rights." Stated more broadly, the prevailing rule denied a plaintiff recovery for economic loss *if that loss* resulted from physical damage to property in which he had no proprietary interest.

*TESTBANK,* 752 F.2d at 1022 (emphasis added). We concluded that "*Robins Dry Dock* is both a widely used and necessary limitation on

---

[3]In *TESTBANK* we wrote, "Denying recovery for pure economic losses is a pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful." *TESTBANK,* 752 F.2d at 1032.

recovery for economic losses." *Id.* at 1027. Thus, *TESTBANK* strongly suggests that recoverable losses somehow be tied to the damage to the *plaintiff's* property, here the flared gas. Clearly, *TESTBANK* sought to preclude wave upon wave of damages. For example, assuming Corpus Christi were a vertically integrated operation, *TESTBANK*'s bright line rule serves to preclude not only recovery for lost gas sales from the well, but also any damages related to refineries that could not process the gas, or damages related to trucking operations that could not transport the gas or to retail outlets that could not sell the final product.

Although one might try to extrapolate an argument from *Consolidated* that, once physical damage to any proprietary interest is proven, all pure economic losses are recoverable, such a reading, we think, is inconsistent with *Consolidated* 's holding. In *Consolidated,* all the awarded damages flowed directly from the destruction of Consolidated's production facilities. Consolidated sued

> not solely for any lost income or other *economic* loss from the interruption of its supply of natural gas (e.g., due to being forced to pay higher prices for an alternative supply) but instead for *physical* losses, as well as *attendant* economic damages, to its own property which occurred as a result of the interruption of Consolidated's supply of gas "within minutes" of the pipeline's rupture.

*Consolidated Aluminum,* 772 F.2d at 1221-22 (third emphasis added).

As we have emphasized, Corpus Christi's claimed economic loss was not "attendant" to the physical damage to Corpus Christi's proprietary interest; the loss was instead occasioned only by the physical injury to Houston's riser, property in which Corpus

Christi had no proprietary interest. To allow recovery for those losses plainly would abrogate the bright line rule of *TESTBANK.* To insure that the principles underlying *TESTBANK* are preserved, we hold that simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences. We therefore reverse the district court on this point, and deny Corpus Christi's recovery of revenue lost while its wells were shut in for the repair of Houston's riser.

(3)

As to Houston's recovery, Zapata takes the position that the district court erred in finding Houston's damages to be $306,000, because it "arbitrarily rejected the uncontradicted and unchallenged testimony and evidence presented by Zapata's expert, Richard Zimmerman," who testified that Houston's damages were approximately $45,000 to $50,000. Although Zapata acknowledges that we must review the district court's finding of damages only for clear error, it cites *Strachan Shipping Co. v. Dresser Indus., Inc.,* 701 F.2d 483, 487 (5th Cir.1983) for its contention that, in cases where "no credibility choice has been made by the district court, "the burden of proving the district court's findings clearly erroneous is to some extent ameliorated.' " It argues that this is just such a case, and that the district court violated precedent of this Circuit by "arbitrarily reject[ing] the testimony of a witness whose testimony appears credible." *Gee Chee On v. Brownell,* 253 F.2d 814, 817 (5th Cir.1958). Zapata admits that Houston is

11

entitled to an award for damage to its riser, but argues that the award should be no more than the cost to which Zimmerman testified at trial—the $45,000 to $50,000 cost of a metal sleeve fitted around the damaged section of the riser.  In a similar vein, Zapata also argues that neither Corpus Christi nor Houston offered any testimony or evidence to contradict Zimmerman's testimony that, had a riser guard been placed around the pipe, there would have been no damage to the riser.  Zapata concludes that it should not have been liable to either party, except for the cost of replacing the riser guard.

Citing *Freeport Sulphur Co. v. S/S HERMOSA,* 526 F.2d 300, 304 (5th Cir.1976), Houston responds that actual cost of repairs is the proper measure of damages.  Houston contends that the court was not bound to accept uncontroverted expert opinion testimony, and that its refusal to do so was a permissible exercise of the district court's discretion that should not be second-guessed on appeal. Houston further points out that, although Zimmerman testified that the platform was not damaged in the allision, the district court found specifically that the platform's boat platform was in fact damaged.  Houston further notes the district court's finding that the possibility remained that, even with a guard, the riser might have sustained some damage.  In the light of that fact, it argues, the district court declined to speculate on the effect that less severe damage to the riser would have had on Houston's damages.[4]

[4]Corpus Christi also points out other weaknesses in Zimmerman's testimony, including his admission that his opinion depended upon an assumption that the barge would have struck the

12

We are not persuaded that the district court's damages findings are clearly erroneous. The district court simply chose not to believe all of Zimmerman's testimony. Indeed, the Supreme Court has observed that it is not error for the factfinder to reject expert opinion evidence, even if uncontroverted. *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627-28, 64 S.Ct. 724, 729, 88 L.Ed. 967, 973 (1944). Here, the factfinder acted within his discretion. To be sure, it is clear from the district court's finding of comparative fault on the part of Houston that it considered—and accepted part of—the testimony of Zapata's expert; it simply chose, within its discretion, not to adopt fully that expert's view as the view of the court with respect to the recoverable damages.

C

Zapata also challenges the district court's award of prejudgment interest to Houston and Corpus Christi. The district court found that the facts of this case were not sufficiently "peculiar" to mandate denial of what is the norm in admiralty cases—award of prejudgment interest to the prevailing party. Zapata urges us to review *de novo* whether peculiar circumstances existed in this case so as to abrogate the normal rule. Corpus Christi and Houston argue that the award of prejudgment interest is a matter committed to the district court's discretion, and that no abuse of that discretion occurred in this case.

---

riser guard in a certain way, and that his diagram reflected that he was unsure what part of the barge had struck the riser.

As the district court correctly noted, in maritime cases the award of prejudgment interest is the rule, rather than the exception, and the trial court has discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable. *See Reeled Tubing, Inc. v. M/V CHAD G,* 794 F.2d 1026, 1028 (5th Cir.1986) (holding that award of prejudgment interest is, in practice, "well-nigh automatic."). We have further explained as follows:

> Whether such circumstances exist is a question of fact, and the standard to be applied on review is the "clearly erroneous" standard. But even if an appellant can demonstrate that it would be clearly erroneous to say that there are no peculiar circumstances, the appellant must further show that when the trial court declined the request to deny prejudgment interest, the trial court abused the discretion that was created by the peculiar circumstances.

*Noritake Co., Inc. v. M/V HELLENIC CHAMPION,* 627 F.2d 724, 729 (5th Cir.1980). Thus, we conclude that the factual findings leading to the district court's decision concerning whether "peculiar circumstances" exist so as to *allow* the court properly to consider prejudgment interest should be reviewed for clear error. If peculiar circumstances are found to exist, the decision whether prejudgment interest *should* be awarded, should be reviewed for abuse of discretion.

With this standard in mind, we think that the district court did not clearly err in concluding that this case did not present "peculiar circumstances" sufficient to justify denial of the award of prejudgment interest to Corpus Christi and Houston. The district court found no delay on the part of either of the prevailing parties; it found no more evidence of a "good faith"

14

dispute than in any other admiralty case; and it found that apportionment of liability in an offshore allision case was not a "peculiarity" that would justify denial of the award of prejudgment interest to Corpus Christi and Houston. We find no clear error in these conclusions.[5]

## CONCLUSION

We AFFIRM the award of damages to Houston, and AFFIRM the award of damages to Corpus Christi in the amount attributable to the flaring of gas to save its wells, of $58,613. We further AFFIRM the award of prejudgment interest to Houston and Corpus Christi, and the taxation of costs to Zapata. We REVERSE that portion of the district court's decision granting to Corpus Christi damages for its economic losses suffered during the period in which Houston repaired its riser.

AFFIRMED in part and REVERSED in part.

BENAVIDES, Circuit Judge, concurring in part and dissenting in part:

I join the majority in affirming the award of damages to Corpus Christi for the flared gas and to Houston for the riser, as

---

[5]Zapata also complains that costs of the action should not have been taxed against it, for essentially the same reasons it urges in its prejudgment interest argument. Federal Rule of Civil Procedure 54(d)(1) states that, with exceptions not relevant here, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." A party that obtains a favorable judgment on at least a fraction of its claims may be regarded as a prevailing party, even though that party has not sustained all its claims. *United States v. Mitchell,* 580 F.2d 789, 793 (5th Cir.1978). The district court, finding Zapata two-thirds at fault—a finding we do not disturb on appeal—acted well within its discretion when it awarded Corpus Christi and Houston their costs of court.

15

well as the award of prejudgment interest and taxation of costs. However, the majority's denial of Corpus Christi's delay damages resulting from the shut-in under the guise of *TESTBANK* ignores controlling authority in this Circuit and forges a new rule of law unintended by *TESTBANK* and its progeny.[1]  I must dissent.

*TESTBANK* stands for a single proposition:  physical damage to a proprietary interest is a prerequisite to recovery for economic loss.  752 F.2d 1019, 1020 (5th Cir.1985) (en banc), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).  We adopted the "bright-line" *TESTBANK* rule to exclude entire categories of potential plaintiffs who had suffered only economic harm.  These would-be plaintiffs, whose claims were potentially indeterminate and indefinite, created the specter of wave upon wave of successive economic consequences.  We drew our bright line with full recognition that some plaintiffs with foreseeable economic injury would be denied recovery.  Nonetheless, our rule of law is not only consistent with established precedent, but also with the appropriate adjudicative role of our courts.

Thus *TESTBANK* operates as a threshold to recovery.  Those plaintiffs with physical injury to a proprietary interest may enter;  those without may not.  This gateway to recovery makes sense.  Having satisfied the prerequisite, the rationale for foreclosing relief for economic harm does not apply because the

---

[1]The delay damages were based upon the loss in present value of the deferred production.  No attack against these damages or the amount thereof is made by the appellant except for the attack based on *TESTBANK.*

plaintiff no longer belongs to the putative class of indeterminate and indefinite claimants; the plaintiff now belongs to the finite fold of those suffering some physical damage. Simply put, once a plaintiff demonstrates physical damage to a proprietary interest, *TESTBANK* is simply inapplicable.

Clearing the *TESTBANK* threshold, however, is not the end of the matter. A plaintiff's right to recovery still hinges on application of traditional tort principles including legal duty and foreseeable injury. These principles, of course, include recovery for foreseeable economic loss caused by a defendant's negligence. These well-settled principles of negligence, not *TESTBANK,* control the ultimate outcome.

In this case, we correctly hold that Corpus Christi's sensible action in flaring gas to save its wells "constitutes the physical damage to a proprietary interest, i.e., its gas, sufficient to satisfy the *TESTBANK* requirements." Maj. op. at ----. At this point, Corpus Christi meets the prerequisite; our *TESTBANK* inquiry is over. General principles of negligence now govern whether Corpus Christi can recover damages. The majority, however, resurrects *TESTBANK* and fashions a new requirement that each element of recoverable loss must satisfy *TESTBANK.* I cannot condone this new rule because it ignores the lessons of our previous authority in this area of law.

In crafting this new rule, the majority relies on *Consolidated Aluminum.* However, the approach this Court took throughout the *Consolidated Aluminum* litigation is inconsistent with the course

17

the majority chooses today.  Consolidated Aluminum sought damages for physical losses as well as attendant economic damages stemming from interruption of gas supply after the defendant negligently severed a pipeline.  772 F.2d 1217, 1222 (5th Cir.1985).  The district court granted summary judgment for the defendant based upon *TESTBANK*.  We reversed stating:  "Consolidated plainly suffered physical harm to property in which it has a proprietary interest—i.e., its own equipment for deriving aluminum.  Thus, *TESTBANK* does not apply." *Id.*  We further explained that the *TESTBANK* rationale for foreclosing relief for economic harm was simply inapplicable because the number of potential plaintiffs was neither indeterminate nor infinite.  *Id.* at 1223.

Having cleared the *TESTBANK* hurdle, we instructed the district court to resolve the issue of Consolidated's right to recovery under traditional tort principles.  In reaching this conclusion, we relied on the RESTATEMENT (SECOND) OF TORTS.  We quoted *in toto* comment b to section 766C that makes clear that if there is physical harm, the general rule prohibiting recovery for negligent interference with contractual relations does not apply and there may be recovery subject to the general rules governing liability for negligence.[2]

_____

[2]This comment is as follows:

> *b. Physical harm to the other.*  The rule stated in this Section applies when the plaintiff suffers only pecuniary loss, such as the loss of the financial benefits of a contract or of prospective trade or financial loss through being put to additional expense. If there is physical harm to the person or land or chattels of the plaintiff, the rule stated in this Section does not apply and there may be recovery for negligence that results in physical harm because of the

18

*See id.* Furthermore, we erased any doubt about our approach in our per curiam opinion denying rehearing. After reiterating that *TESTBANK* was inapplicable because Consolidated suffered physical harm, we "left the application of traditional tort principles, including foreseeability and the related concept of legal duty, for the trial court to determine on remand." *Id.* at 1224.

On remand, the district court found that the defendant was not liable for the damage to Consolidated because it was an unforeseeable consequence of the rupture of the pipeline. 639 F.Supp. 1173, 1183 (W.D.La.1986), *aff'd,* 833 F.2d 65 (5th Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). The court relied on the peculiar facts of that case. For example, Consolidated's plant was located six miles away from the point of rupture, on a different body of water, and upstream in the gas distribution system. Additionally, the defendant had no knowledge of Consolidated's connexity to the pipeline. Finally, Consolidated was so far outside the zone of obvious danger that no reasonable person would have anticipated that a rupture of the pipeline would cause damage to "such a remotely located plant." *Id.*

On appeal after remand, a different panel of this Court, per

---

nonperformance of a contract with the plaintiff. (Cf. §§ 435B, 499). This recovery is of course subject to the usual rules governing liability for negligence. When recovery is allowed, the loss of expected profits or other pecuniary loss may, in an appropriate case, be recovered as "parasitic" compensatory damages.

RESTATEMENT (SECOND) OF TORTS § 766C cmt. b (1979).

then Judge Politz, now Chief Judge, affirmed. 833 F.2d 65 (5th Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). We agreed with the district court that the defendant could not have anticipated that its failure to follow safe dredging practices would result in physical damage to a plant several miles away. *Id.* at 68. Significantly, we did not resurrect *TESTBANK* and use it to foreclose Consolidated's recovery. Rather, we reaffirmed our commitment to a two-step approach. Initially, *TESTBANK* must be applied. Once satisfied, application of traditional tort principles then determines recovery.

We used a similar approach in *Domar Ocean Transp. v. M/V ANDREW MARTIN,* 754 F.2d 616 (5th Cir.1985). Domar owned a tank barge and leased a tug to tow it. While in tow, the Domar barge was struck by another towed by the Andrew Martin. Domar recovered delay damages for lost profits from the use of both the barge and the leased tug. Andrew Martin appealed contending that *TESTBANK* barred recovery for the loss of use of the tug because it suffered no physical damage. This Court rejected this argument and affirmed the damage award. We held that Domar had a proprietary interest in the barge-tug unit noting that it was indisputable "that they functioned as an integrated unit." *Domar,* 754 F.2d at 619. Consequently, "*TESTBANK* is no bar to Domar's recovery for the loss of use of the unit." *Id.* Finding no solace in *TESTBANK,* Andrew Martin argued, as a matter of law, Domar's damages for loss of use of the undamaged tug were too tenuous and remote to be reasonably foreseeable. Again, we rejected the argument. Judge Higginbotham,

20

author of *TESTBANK,* wrote for the panel: "On these facts, that Domar's damages were foreseeable is implicit in the conclusion that the test of *TESTBANK* is met." *Id.*

In the case before us today, Corpus Christi suffered two types of economic damages: flared gas and delay damages from the shut-in. Having satisfied the *TESTBANK* prerequisite, *Consolidated Aluminum* and *Domar* instruct that fundamental negligence principles determine Corpus Christi's recovery. Applying traditional tort principles, these economic damages are recoverable unless they are unforeseeable or casually unrelated to the allision. When Zapata's barge collided with the Corpus Christi platform it damaged the gas riser. This necessitated Corpus Christi's prudent action in flaring gas to avoid permanent damage to the well. Is it unforeseeable that Corpus Christi would also suffer economic damages from a shut-in caused by a need to repair the gas riser? Certainly not. The damages from both the flared gas and the subsequent shut-in directly flow from the allision. This is not a situation, as presented in *Consolidated Aluminum,* where the damages occur in some remote location unknown and unseen by the tortfeasor. The Zapata barge ran into the Corpus Christi platform and the attached riser directly leading to both the flared gas and necessary shut-in.

In stripping Corpus Christi of its recovery for delay damages caused by the shut-in, the majority stresses that these losses were not "tied" to damage to Corpus Christi's property. The majority maintains that the only property of Corpus Christi that was damaged

21

was the flared gas.  Corpus Christi's ownership interest in the gas riser, however, is not dispositive as *Domar* makes clear.  The gas riser, while owned by Houston, was permanently connected to the northeast leg of Corpus Christi's platform.  Thus the riser operates as an integrated unit with the platform.  Under *Domar,* Corpus Christi, while not the owner of the riser, can recover its foreseeable economic damages.

The new rule of recovery that the majority creates is not dictated by either the holding or rationale of *TESTBANK.*  It is inconsistent with the approach this Court has used in both *Consolidated Aluminum* and *Domar.*  Having satisfied the *TESTBANK* inquiry, Corpus Christi should be allowed to recover all foreseeable economic damages that flow from the allision under traditional tort principles.  Contrary to the majority's claim, allowing this recovery does not abrogate the bright line rule of *TESTBANK.*  Rather, it is the majority's new layer of *TESTBANK* analysis that clouds the water *TESTBANK* and its progeny have made clear.  I would affirm the award of the foreseeable delay damages to Corpus Christi.