United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 26, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-30522

---

OBEDEAN CREAR, JR.,

Plaintiff,

versus

OMEGA PROTEIN, INC.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOE NATHAN CREAR, OBEDEAN CREAR, SR., CLARENCE O. CREAR, SR.,
JACQUELYN D. JONES, ANDREW CREAR, BRINFUS LEE CREAR, SR., MALONE
CREAR, JR. AND ADRIAN L. CREAR,

Plaintiffs - Appellants,

versus

OMEGA PROTEIN, INC.,

Defendant - Appellee.

---

Appeal from the United States District Court
For the Eastern District of Louisiana
(01-CV-3876)

---

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiffs, heirs of Pernell Crear, brought wrongful death suit against Omega Protein, Inc. Omega previously employed Obedean Crear, who suffered a head injury at work. Thirteen months later Mr. Crear murdered his grandmother, which Plaintiffs assert was the foreseeable result of Omega's negligence. Plaintiffs appeal the district court's decision to grant summary judgment for Omega based on the finding that Omega owed no duty to the grandmother because her injury was not foreseeable. We AFFIRM.

I

On June 24, 1999, Mr. Obedean Crear murdered Pernell Crear, his grandmother.[1] Thirteen months before the murder, Mr. Crear suffered a head injury while working aboard one of Omega's fishing vessels when an improperly affixed stern pole fell and struck him. He was treated for a concussion and for pain in his back and neck. Mr. Crear developed severe mental problems. Various physicians treated Mr. Crear between May 1998 and June 1999, including a psychiatrist's treatment two weeks before the murder, but it appears that his mental problems may have been improperly diagnosed or untreated.

Pernell Crear's heirs sued Defendant Omega Protein, Inc., Mr. Crear's former employer, for wrongful death, alleging that Pernell Crear's murder was a foreseeable result of Omega's negligence. Defendant Omega Protein stipulated to Plaintiffs' facts in its

---

[1] Mr. Crear was prosecuted for the murder and found not guilty by reason of insanity.

Motion for Summary Judgment. Specifically, it stipulated that (1) the injury to Mr. Crear caused the murder of his grandmother, and (2) Mr. Crear's mental problems were left untreated due to the actions of Omega.

Omega's sole argument below was that the murder of Mr. Crear's grandmother was unforeseeable as a result of his head injury; therefore, Omega owed no duty to her or her heirs. In support of its summary judgment motion, Omega attached deposition testimony of nine family members, most of whom are plaintiffs in this action. Each family member testified that they never believed Mr. Crear would physically harm his grandmother. In response, Plaintiffs submitted an expert's affidavit, opining that "it is certainly foreseeable that a person who suffers an injury such as that of Obedean Crear would develop violent propensities."

The district court granted Omega's summary judgment motion. Plaintiffs appeal this judgment, asserting that Omega's summary judgment evidence was insufficient and that its own evidence foreclosed the possibility of summary judgment.

II

The standard for reviewing the grant of summary judgment is clear. Summary judgment is appropriate when the summary judgment evidence shows "that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."[2]

There is some dispute between the parties regarding the controlling law. Plaintiffs argue that Mississippi law must apply, but they did not make this argument in opposition to the summary judgment below, do not brief the issue to this court, and do not raise it as an independent issue on appeal. Instead, Plaintiffs assert in one paragraph that admiralty law should not apply. In an earlier, and apparently uncontested ruling, the district court held that admiralty law applied. It made this holding because the alleged cause of the murder - Mr. Crear's head injury - occurred on a vessel on navigable waters. Although the issue is apparently not preserved and is inadequately briefed, its resolution does affect the case. General tort law principles inform the analysis of maritime torts,[3] and the district court correctly noted that the rules of negligence are the same under admiralty and Mississippi law. Finally, regardless of the applicable law, Plaintiffs failed to provide any evidence that it owed Mr. Crear's grandmother a duty of care.

The elements of a cause of action for negligence are well established. A plaintiff must establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the

---

[2] FED. R. CIV. P. 56.

[3] *See Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987).

4

duty; (3) the plaintiff suffered damages; and (4) the breach of the duty proximately caused the damages.[4]  Whether a defendant owes a duty to a plaintiff depends on various factors, and the primary indicator of duty is whether the harm suffered by the plaintiff was foreseeable.[5]

Harm is foreseeable "if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention."[6]  In *Consolidated Aluminum*, an aluminum reduction plant sued, among others, a dredge operator who cut a pipeline that supplied power to the plant.  Once the dredge cut the pipe, the pipe's owner turned off its supply of gas.  As a result, the plaintiff's plant could no longer power its electrical generators. The plant and the work-in-progress were damaged.  The court held that the dredge operator owed no duty to the plaintiff because its harm "was not of a general sort expected to follow from the failure to dredge carefully in proximity to a gas pipeline."[7]  The court also offered examples of foreseeable harms:  "Injury to property

---

[4] *See Lloyd's Leasing Limited v. Conoco*, 868 F.2d 1447, 1449 (5th Cir. 1989).

[5] *Consolidated Aluminum*, 833 F.2d at 67.

[6] *Id*. at 68.

[7] *Id*.

5

and persons from the escaping gas, or from a fire which might have ensued, would be examples of consequences that would be foreseeable."[8] But the injury to the plant fell outside the general, reasonably anticipated class of harm as a result of negligent dredging.

Mississippi law follows the same principle. Damages to a plaintiff must be reasonably foreseeable, but "[o]rdinary care does not require that a person prevision unusual, improbable or extraordinary occurrences. Failure to anticipate remote possibilities does not constitute negligence."[9] To establish a defendant's liability for a negligent act, "'the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom.'"[10]

In *Rolison*, a batter in a softball game threw his bat, injuring a base runner.[11] The base runner sued, among others, the city and the umpires. The trial court granted defendant's summary judgment because there was no evidence that the defendants could

---

[8] *Id.*

[9] *Rolison v. City of Meridian*, 691 So.2d 440, 444 (Miss. 1997) (citing seven cases dating back to 1933).

[10] *Id.* (quoting *Mauney v. Gulf Refining Co.*, 9 So.2d 780, 780-81 (1942) (citations omitted)).

[11] *Id.* at 441.

6

foresee a batter throwing his bat. The Mississippi Supreme Court upheld the decision to grant defendant's summary judgment.[12]

> A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard-of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible.[13]

The court held that because both parties testified that there was no way to foresee this type of action, summary judgment was appropriate.[14]

## III

These principles indicate that the court properly granted summary judgment. Despite Plaintiffs' various arguments, nothing indicates that a reasonable employer in Omega's situation could foresee a murder by its employee thirteen months after the employee's initial head injury. Plaintiffs presented no evidence that the injury to Mr. Crear's grandmother is the general type of injury resulting from Mr. Crear's at-work injury.

Various considerations support the district court's decision. First and most basically, the harm resulting from Omega's

---

[12] *Id*. at 444.

[13] *Id*. (quoting *Mauney*, 9 So.2d at 780-81).

[14] *Id*.

7

negligence – the murder of Mr. Crear's grandmother – is not harm of the "general sort to persons of a general class" resulting from a negligently affixed stern pole. One must ask what general sort of harm would be caused to what general class as a result of Omega's negligence.[15] Here, Omega stipulates that it failed to properly affix the stern pole. What type of harm, and to what general class of people, could a reasonable employer anticipate as a result of this negligence? A reasonable employer could anticipate (1) direct harm to employees like the injury suffered by Mr. Crear; (2) direct harm to anyone who visited the vessel or stood near enough to it to be struck by the falling stern pole; (3) aggravated injuries resulting from medical malpractice while a victim is being treated for the injury; and (4) economic and emotional damages resulting from the loss of work or mental incapacity. A reasonable employer could not anticipate that after an employee was struck by the pole, he would develop a psychosis, that his family members would not detect this developing psychosis, that various physicians would fail to neutralize this psychosis over a thirteen-month period, and finally that the employee would suddenly snap and murder a family member. If this conduct is foreseeable, one must ask what is not foreseeable. One must also consider what an employer in Omega's situation could have done to deter this type of action, and for how long must an employer continue the deterrence.

---

[15] *Consolidated Aluminum*, 833 F.2d at 68.

8

Second, Plaintiffs discount the level of summary judgment proof presented by Omega. Plaintiffs state that "[i]n defendant's motion for summary judgment, no facts were presented, except that the Crear family had no idea that Mr. Crear would be capable of such violent behavior." Each one of Mr. Crear's family members, many of whom are plaintiffs in this case, testified in their depositions that no actions of Mr. Crear led them to believe that he was capable of this type of act. Like the plaintiff's admission in *Rolison* that no one could foresee the batter throwing his bat and injuring a runner, Plaintiffs' admissions here are similarly compelling. The Crear family did not indicate any behavior by Mr. Crear that would have led them to believe he had violent capabilities.

Third, Plaintiffs' expert report does not foreclose summary judgment. The uncontradicted opinion states that victims of frontal lobe head injuries have an increased chance of developing violent behavior. However, it does not follow from this general opinion that a reasonable employer in Omega's position would anticipate that their negligence in failing to properly affix a stern pole would cause an employee to seriously injure or murder another person. Mr. Crear was provided medical attention over the thirteen-month period. Plaintiffs insinuate that various doctors may have improperly diagnosed or mistreated Mr. Crear's condition. The expert's general opinion that violent conduct is a foreseeable

9

consequence of a frontal lobe injury is no answer to Omega's evidence that Mr. Crear's extreme, sudden, and violent behavior thirteen months after his injury was unforeseeable as a result of failing to properly affix a stern pole. The test for foreseeability simply does not extend that far.

Fourth, Plaintiffs incorrectly argue that the district court set a new standard for foreseeability in its order. Plaintiffs focus on the district court's language that an injury must be probable, not just possible. As discussed above, Mississippi law does not require a defendant to foresee the improbable.[16]

Finally, the district court's decision does not conflict with *American National Insurance Company v. Hogue*.[17] *Hogue* held that once sufficient evidence is presented to create a fact question on foreseeability, a jury must resolve the question. This case is easily distinguished; here the district court correctly found that "[t]here is simply no evidence that Mr. Crear exhibited any behavior prior to the murder that would indicate that Mr. Crear had violent propensities or that murdering his grandmother was a possibility." Plaintiffs presented no evidence of foreseeability that would require a jury's resolution. Even under *Hogue*'s rationale, duty remained a question of law for the court to decide.

---

[16] *Rolison v. City of Meridian*, 691 So.2d 440, 444 (Miss. 1997) (citing seven cases dating back to 1933).

[17] 749 So.2d 1254 (Miss. App. 2000).

10

IV

The district court properly found that Omega owed no duty to Plaintiffs. There is no genuine issue of material fact indicating the grandmother's injury to be foreseeable. The harm resulting from Omega's negligence – Mr. Crear's murder of his grandmother – is too far outside the foreseeable class of harm and individuals to impose a duty on Omega. Accordingly, we AFFIRM.